Appeal Nos. 22-1824, -1825, -1826, -1828, -1829, -1830

# United States Court of Appeals for the Federal Circuit

## QUALCOMM INCORPORATED,

*Appellant*,

v.

## INTEL CORPORATION,

*Cross-Appellant*.

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2018-01326, IPR2018-01327,
IPR2018-01328, IPR2018-01329, IPR2018-01330, IPR2018-01340

## APPELLANT'S RESPONSE AND REPLY BRIEF

JENNIFER L. SWIZE
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001
(202) 879-5417

MATTHEW W. JOHNSON
JOSHUA R. NIGHTINGALE
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 394-9524

SASHA MAYERGOYZ
MARC S. BLACKMAN
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, Illinois 60606
(312) 269-1572
smayergoyz@jonesday.com

ROBERT M. BREETZ
JONES DAY
901 Lakeside Avenue
Cleveland, OH  44114
(216) 586-7213

*Attorneys for Appellant*

Claim 1:

1. An apparatus comprising:

a power tracker configured to determine a single power tracking signal based on a plurality of inphase (I) and quadrature (Q) components of a plurality of carrier aggregated transmit signals being sent simultaneously, wherein the power tracker receives the plurality of I and Q components corresponding to the plurality of carrier aggregated transmit signals and generates the single power tracking signal based on a combination of the plurality of I and Q components, wherein the plurality of carrier aggregated transmit signals comprise Orthogonal Frequency Division Multiplexing (OFDM) or Single Carrier Frequency Division Multiple Access (SC-FDMA) signals;

a power supply generator configured to generate a single power supply voltage based on the single power tracking signal; and

a power amplifier configured to receive the single power supply voltage and the plurality of carrier aggregated transmit signals being sent simultaneously to produce a single output radio frequency (RF) signal.

Appx343 (14:28-48).

## <u>CERTIFICATE OF INTEREST</u>

Case No. 22-1824, -1825, -1826, -1828, -1829, -1830

*Qualcomm Incorporated v. Intel Corporation*

Filing Party/Entity:  Qualcomm Incorporated


I certify the following information and any attached sheets are accurate and

complete to the best of my knowledge.

Date:  May 11, 2023          Signature:    */s/ I. Sasha Mayergoyz*

                             Name:        I. Sasha Mayergoyz

**1. Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

Qualcomm Incorporated

**2. Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None

**3. Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None

**4. Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

Richard A. Graham, Jones Day
Joseph M. Sauer, Jones Day
David M. Maiorana, Jones Day

**5. Related Cases** – Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

None

**6. Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

Not Applicable

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................ vi

TABLE OF ABBREVIATIONS ............................................................. x

STATEMENT OF RELATED CASES ................................................ xii

ARGUMENT IN REPLY ON QUALCOMM'S APPEAL .......................1

I.      THE BOARD'S DETERMINATION THAT SKILLED ARTISANS
        WOULD HAVE MODIFIED YU'S BASE-STATION
        IMPLEMENTATIONS FOR USE IN MOBILE DEVICES IS
        LEGALLY AND FACTUALLY ERRONEOUS .........................................4

        A.      No Evidence Supports The Board's Conclusion Regarding Yu's
                Paragraph 34 And Figure 2 ..................................................5

                1.      No Evidence Supports The Board's Reading Of
                        Paragraph 34 ..................................................................5

                2.      Yu's Figure 2 Refutes Intel's Position.....................10

        B.      Intel Never Proposed A "Similar-Devices" Theory And The
                Board Erred In Raising This Theory *Sua Sponte* ..............14

        C.      The Board's Discussion Of Bodily Incorporation Is Irrelevant
                And Incorrect.....................................................................16

II.     EVEN IF A REASON TO MODIFY YU EXISTED, THE BOARD'S
        OBVIOUSNESS ANALYSIS IS LEGALLY ERRONEOUS AND
        LACKS SUBSTANTIAL EVIDENCE.......................................................18

        A.      Intel Erroneously Asserts That "Context" Somehow Relieved
                The Board From Providing A Reasoned Explanation With
                Evidence-Based Findings...................................................19

        B.      Intel's Efforts To Distance The Board From Relying On
                Ordinary Creativity Underscore The Reversible Legal Errors .........21

        C.      Intel Concedes That The Board's Decision Lacks Necessary
                Findings On Reasonable Expectation Of Success ..............23

        D.      Intel's Remaining Arguments Cannot Support The Board's
                Legally Deficient Decision.................................................25

**TABLE OF CONTENTS**
(continued)

Page

III.   INTEL CANNOT SHOW ANY ERROR IN THE BOARD'S CLAIM
       CONSTRUCTION ........................................................................26

       A.   Intel Is Estopped From Challenging The Very Same
            Construction On Which It Based Its Petitions ...................28

       B.   As Intel Previously Conceded, There Is No Lexicography ..............30

       C.   The Board's Construction Is The Ordinary Meaning ........................34

            1.   Intrinsic Evidence Supports The Board's Construction ..........35

            2.   Extrinsic Evidence Supports The Board's Construction ........39

       D.   Intel's Newly-Proposed Construction Reads "Aggregated" Out
            Of The Claim Language ....................................................41

       E.   The Board Correctly Found That "User" In The Claim
            Construction Does Not Encompass A Base Station..........................43

ARGUMENT IN RESPONSE TO THE CROSS-APPEAL ...................................46

STATEMENT OF THE ISSUES IN RESPONSE TO THE CROSS-
APPEAL ............................................................................................46

STATEMENT OF THE CASE IN RESPONSE TO CROSS-APPEAL...............46

       A.   Intel's IPR Petitions..........................................................46

       B.   The Board's Final Written Decisions On This Cross-Appeal ...........47

SUMMARY OF THE ARGUMENT FOR THE CROSS-APPEAL ....................48

STANDARD OF REVIEW IN RESPONSE TO THE CROSS-APPEAL ...........50

I.   SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
     FINDINGS THAT THE CHALLENGED CLAIMS ARE NOT
     UNPATENTABLE OVER THE CHEN-BASED GROUNDS...................50

       A.   Substantial Evidence Supports The Board's Findings That Chen
            Is Directed To A Base Station Rather Than A User-Device
            Implementation..................................................................51

       B.   Intel's Petitions Did Not Provide Any Reason Why Skilled
            Artisans Would Have Been Motivated To Modify Chen To
            Provide A User-Device Implementation............................................53

# **TABLE OF CONTENTS**
### (continued)

**Page**

C.    Intel's Argument Impermissibly Raises New Theories Never Presented In Its Petitions ........................................................55

II.    THE BOARD CORRECTLY CONSTRUED THE DISPUTED TERMS ..........................................................................................58

CONCLUSION .........................................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Lab'ys v. Andrx Pharms., Inc.*,
　473 F.3d 1196 (Fed. Cir. 2007) ....................................................31, 34

*Abbott Lab'ys v. Syntron Bioresearch, Inc.*,
　334 F.3d 1343 (Fed. Cir. 2003) ....................................................32, 33

*Al-Site Corp. v. VSI Int'l, Inc.*,
　174 F.3d 1308 (Fed. Cir. 1999) ...........................................................6

*Alexsam, Inc. v. IDT Corp.*,
　715 F.3d 1336 (Fed. Cir. 2013) ........................................................58

*Am. Radio LLC v. Qualcomm Inc.*,
　578 F. App'x 975 (Fed. Cir. 2014) ....................................................37

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
　580 F.3d 1340 (Fed. Cir. 2009) ....................................................23, 24

*Ancora Techs., Inc. v. Apple, Inc.*,
　744 F.3d 732 (Fed. Cir. 2014) ...........................................................30

*Arendi S.A.R.L. v. Apple Inc.*,
　832 F.3d 1355 (Fed. Cir. 2016) ........................................................22

*Ariosa Diagnostics v. Verinata Health, Inc.*,
　805 F.3d 1359 (Fed. Cir. 2015) ....................................................11, 50

*Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*,
　119 F.3d 953 (Fed. Cir. 1997) ...........................................................18

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
　216 F.3d 1042 (Fed. Cir. 2000) ........................................................35

*Bicon, Inc. v. Straumann Co.*,
　441 F.3d 945 (Fed. Cir. 2006) ...........................................................42

*Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*,
　749 F.3d 1349 (Fed. Cir. 2014) ....................................................37, 38

*Brand v. Miller*,
　487 F.3d 862 (Fed. Cir. 2007) ...........................................................10

*Broadcom Corp. v. Emulex Corp.*,
　732 F.3d 1325 (Fed. Cir. 2013) ........................................................23

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962).................................................................1

*Cephalon, Inc. v. Abraxis Bioscience, LLC,*
    618 F. App'x 663 (Fed. Cir. 2015).....................................32

*Colas Sols., Inc. v. Blacklidge Emulsions, Inc.,*
    759 F. App'x 986 (Fed. Cir. 2019).....................................56

*DSS Tech. Mgmt., Inc. v. Apple Inc.,*
    885 F.3d 1367 (Fed. Cir. 2018) .................................*passim*

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,*
    800 F.3d 1375 (Fed. Cir. 2015)..........................................52

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.,*
    881 F.3d 1354 (Fed. Cir. 2018) ......................................7, 51

*Google LLC v. IPA Techs. Inc.,*
    34 F.4th 1081 (Fed. Cir. 2022) ..........................................53

*Henny Penny Corp. v. Frymaster LLC,*
    938 F.3d 1324 (Fed. Cir. 2019) ..........................................57

*Hill-Rom Servs., Inc. v. Stryker Corp.,*
    755 F.3d 1367 (Fed. Cir. 2014) ...............................30, 33, 34

*Home Diagnostics, Inc. v. LifeScan, Inc.,*
    381 F.3d 1352 (Fed. Cir. 2004) ..........................................30

*Hynix Semiconductor Inc. v. Rambus Inc.,*
    645 F.3d 1336 (Fed. Cir. 2011) ..........................................18

*In re Cortright,*
    165 F.3d 1353 (Fed. Cir. 1999) ..........................................40

*In re Gartside,*
    203 F.3d 1305 (Fed. Cir. 2000) ......................................4, 16

*In re Killian,*
    45 F.4th 1373 (Fed. Cir. 2022) ..........................................44

*In re Lee,*
    277 F.3d 1338 (Fed. Cir. 2002) ...............................12, 19, 20

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Magnum Oil Tools Int'l, Ltd.*,
    829 F.3d 1364 (Fed. Cir. 2016) ....................................................7, 15

*In re Nuvasive, Inc.*,
    842 F.3d 1376 (Fed. Cir. 2016) ...........................................................9

*In re Stepan Co.*,
    868 F.3d 1342 (Fed. Cir. 2017) .........................................................26

*Intel Corp. v. Qualcomm Inc.*,
    21 F.4th 801 (Fed. Cir. 2021) ...........................................................41

*Intel Corp. v. XMTT, Inc.*,
    No. 2021-2127, 2022 WL 1152312 (Fed. Cir. Apr. 19, 2022)....................28, 29

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
    821 F.3d 1359 (Fed. Cir. 2016) ...........................................24, 56, 57

*Invitrogen Corp. v. Clontech Lab'ys., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) ...........................................................7

*Key Pharms. v. Hercon Lab'ys Corp.*,
    161 F.3d 709 (Fed. Cir. 1998) ......................................................28, 29

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)..........................................................14, 16, 20

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
    814 F.3d 1343 (Fed. Cir. 2016) .........................................................33

*Meds. Co. v. Mylan, Inc.*,
    853 F.3d 1296 (Fed. Cir. 2017) .........................................................32

*MModal LLC v. Nuance Commc'ns., Inc.*,
    846 F. App'x 900 (Fed. Cir. 2021) ....................................................57

*Monsanto Co. v. Scruggs*,
    459 F.3d 1328 (Fed. Cir. 2006) .........................................................44

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
    133 F.3d 1473 (Fed. Cir. 1998) .........................................................33

*Netflix, Inc. v. DivX, LLC*,
    No. 2022-1043, 2023 WL 3115576 (Fed. Cir. Apr. 27, 2023)............................24

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*OSI Pharms., LLC v. Apotex Inc.*,
  939 F.3d 1375 (Fed. Cir. 2019) ............................................................4

*Pers. Web Techs., LLC v. Apple, Inc.*,
  848 F.3d 987 (Fed. Cir. 2017) ..............................................................3

*Power Integrations, Inc. v. Lee*,
  797 F.3d 1318 (Fed. Cir. 2015) ...............................................1, 8, 23

*Rovalma, S.A. v. Böhler Edelstahl GmbH*,
  856 F.3d 1019 (Fed. Cir. 2017) ..........................................................13

*SAS Inst. Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) .........................................................................56

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
  225 F.3d 1349 (Fed. Cir. 2000) .....................................................26, 58

*Sinorgchem Co., Shandong v. ITC*,
  511 F.3d 1132 (Fed. Cir. 2007) .....................................................31, 34

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
  8 F.4th 1349 (Fed. Cir. 2021) .......................................................50, 51

*TQ Delta, LLC v. CISCO Sys., Inc.*,
  942 F.3d 1352 (Fed. Cir. 2019) ..........................................................25

*TriVascular, Inc. v. Samuels*,
  812 F.3d 1056 (Fed. Cir. 2016) ..........................................................18

*V-Formation, Inc. v. Benetton Grp. SpA*,
  401 F.3d 1307 (Fed. Cir. 2005) ..........................................................37

*Vicor Corp. v. SynQor, Inc.*,
  706 F. App'x 673 (Fed. Cir. 2017) ....................................................18

*Vivid Techs., Inc. v. Am. Sci. & Eng., Inc.*,
  200 F.3d 795 (Fed. Cir. 1999) ............................................................39

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir 2008) ...........................................................26

**STATUTES**

35 U.S.C. § 103 ............................................................................................46

35 U.S.C. § 312 ............................................................................................56

## TABLE OF ABBREVIATIONS

The following abbreviations are used in this brief:

### *Parties*

| Abbreviation | Term |
|---|---|
| Intel or petitioner | Intel Corporation |
| Qualcomm or patent owner | Qualcomm Incorporated |

### *Citations*

| Abbreviation | Term |
|---|---|
| Appx__ | Joint Appendix at page(s) ___ |
| QBr. | Qualcomm's Opening Brief, Dkt. No. 15 |
| IBr. | Intel's Brief, Dkt. No. 20 |

### *Terms*

| Abbreviation | Term |
|---|---|
| 3GPP Technical Specification | 3GPP TS 36.101 v11.0.0 Technical Specification (Appx20869-20885) |
| '675 Patent | U.S. Patent No. 9,608,675 (Appx325-345) |
| APA | Administrative Procedure Act |
| The Board | The Patent Trial and Appeal Board |
| challenged claims | Claims 1-15, 17-25, and 27-33 of U.S. Patent No. 9,608,675 |
| Chen | Article entitled "Hybrid Envelope Tracking For Efficiency Enhancement In Concurrent Dual-Band PAs" (Appx2851-2853) |
| Chen publication | U.S. Patent Pub. No. 2012/0321018 A1 (Appx20886-20903) |
| Choi | Article entitled "Envelope Tracking Power Amplifier Robust to Battery Depletion" |
| Dahlman | Excerpts from "4G LTE/LTE-Advanced for Mobile Broadband" (Appx2499-2521) |
| Eliezer | U.S. Patent Application Publication No. 2009/0004981 |
| Hou | U.S. Patent Application Publication No. 2011/0193629 |

| IPR | *Inter Partes* Review |
|---|---|
| ITC | International Trade Commission |
| POSA | A person of ordinary skill in the art at the time of the invention |
| PTO | The United States Patent and Trademark Office |
| RF | Radio frequency |
| Wang | Article entitled "Design of Wide-Bandwidth Envelope-Tracking Power Amplifiers for OFDM Applications" (Appx2483-2498) |
| Wimpenny | U.S. Patent Application Publication No. 2012/0229208 |
| Yu | European Patent Application No. EP 2442440 A1 (Appx2469-2482) |

*Additionally, throughout this brief, all emphasis is added unless otherwise noted, and all internal citations and quotations are omitted unless otherwise noted.*

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Appellant Qualcomm Incorporated provides as follows:

1. This appeal consolidates Qualcomm's appeal in IPR2018-01326, 01327, -01329, and -01340 with Intel's appeal in IPR2018-01328 and -01330.

2. There was a previous appeal of the Board's Final Written Decisions in the IPRs underlying the present appeal and cross-appeal: *Qualcomm Incorporated v. Intel Corporation*, Nos. 20-1589, -1590, -1591, -1592, -1593, -1594, reported at 6 F.4th 1256 (Fed. Cir. July 27, 2021) (Moore, C.J., Reyna and Stoll, JJ.).

3. The patent at issue in the prior and present appeals and cross-appeal, U.S. Patent No. 9,608,675, was previously asserted in the following litigations: *Certain Mobile Electronic Devices and Radio Frequency and Processing Components Thereof*, Inv. No. 337-TA-1065 (U.S.I.T.C.), and *Qualcomm Incorporated v. Apple Inc.*, No. 3:17-cv-01375-DMS-MDD (S.D. Cal.). These cases have been resolved.

## ARGUMENT IN REPLY ON QUALCOMM'S APPEAL

This is not a case with competing evidence where the Board credited one side over the other. Rather, as Intel's response brief confirms, there is no evidence to support the Board's obviousness determination. During the IPR proceedings, Intel did not offer any evidence that skilled artisans would have modified base-station implementations for use in mobile devices, and it never provided any argument about Yu's paragraph 34 or Figure 2 (showing a mobile-device implementation). Intel relied exclusively on Yu's Figures 3 and 4 showing base-station implementations. The Board, however, seized on paragraph 34 to conclude that skilled artisans "would have had reason to modify Yu's base station implementations … to provide a mobile device implementation." Appx52.

Intel does not—and cannot—cite any expert testimony or arguments from its petitions to support the Board's conclusion. None exists. Instead, Intel proffers attorney arguments that were never presented to the Board and on which the Board did not rely. Though Intel seeks to rewrite the Board's decision, this Court has "no warrant to 'accept appellate counsel's *post hoc* rationalizations for agency action.'" *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962)). Unable to defend the Board's opinion, Intel pivots to an alternative ground of affirmance by challenging the Board's claim construction. Intel criticizes the

Board for adopting the exact construction for which Intel itself advocated as the broadest reasonable interpretation. Intel's arguments cannot sustain the judgment of unpatentability.

First, Qualcomm demonstrated that the Board erred in concluding that a conclusory, isolated statement in Yu's paragraph 34 supplied a reason to modify base-station implementations for use in mobile devices. QBr. 27-36. Qualcomm's *unrebutted* expert testimony established that skilled artisans would not understand paragraph 34 as providing any reason to modify Yu's base-station implementations. Indeed, there is no evidence whatsoever as to why skilled artisans would have modified the base-station implementations in Yu's Figures 3 and 4 for use in mobile devices *when Yu's Figure 2 already discloses* a mobile-device implementation. On appeal, Intel musters the naked attorney assertion that paragraph 34 "contemplates modifying Figures 3 and 4 (to the extent necessary) for use in mobile devices." IBr. 27-28. Intel's attempt to support that assertion consists solely of attorney arguments that were never raised below.

Second, the Board failed to conduct a proper, complete obviousness analysis. The Board did not make *any* findings as to (i) what modifications to Yu would have been necessary to reach the claimed inventions, and (ii) why skilled artisans would have had a reasonable expectation of success in making those unexplained modifications. QBr. 38-56. Conceding the absence of such findings,

Intel argues that the Board's conclusory statements were sufficient given the "context" of this case. IBr. 38-45. The exact opposite is true. The technology here is complex, and context demanded a "detailed explanation[]" with evidentiary-based findings. *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 994 (Fed. Cir. 2017). As this Court recognizes, technology involving base stations and mobile devices is "not unusually simple" and "is not particularly straightforward." *DSS Tech. Mgmt., Inc. v. Apple Inc.*, 885 F.3d 1367, 1375 (Fed. Cir. 2018).

Third, Intel's claim-construction challenge involves Intel essentially litigating against itself. The Board's construction is word-for-word identical to the construction that Intel's petitions advanced as the broadest reasonable interpretation. Intel is estopped from challenging the Board's adoption of the exact construction that Intel urged. Intel seeks a different construction based on its argument on remand that the applicant acted as a lexicographer. Intel's unequivocal representation at the IPR oral hearing refutes its new position. As Intel made clear: "*[W]e're not dealing with any kind of lexicography or disavowal here*." Appx1648, 10:5-17.

## I.    THE BOARD'S DETERMINATION THAT SKILLED ARTISANS WOULD HAVE MODIFIED YU'S BASE-STATION IMPLEMENTATIONS FOR USE IN MOBILE DEVICES IS LEGALLY AND FACTUALLY ERRONEOUS

The Board's obviousness determination relies on an isolated sentence in Yu's paragraph 34 stating that the "power amplifier PA may e.g. be employed in wireless communications systems such as base stations … or wireless transceivers of mobile terminals and the like." Appx2472 ¶34. That single, cursory sentence is not evidence that a "reasonable mind might accept as adequate to support" the Board's determination, *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000), when "examin[ed] o[n] the record as a whole." *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1384 (Fed. Cir. 2019).

Uncontroverted expert testimony establishes that Yu's paragraph 34 discloses three separate embodiments for controlling power amplifiers: one for a mobile device (Figure 2), and two for base stations (Figures 3 and 4). QBr. 27-31; Appx3983-3986 ¶¶64-68. Paragraph 34 provides no reason to modify Yu's base-station implementation for a mobile device, especially given that Yu *already discloses* a mobile-device implementation. Ignoring Dr. Williams's reasoned testimony, the Board applied Yu's paragraph 34 in a conclusory manner with no supporting evidence. Appx50; Appx52.

### A.    No Evidence Supports The Board's Conclusion Regarding Yu's Paragraph 34 And Figure 2

Under the heading that "the Board's factual findings are supported by substantial evidence" (IBr. 31), Intel spends one-and-a-half pages trying to defend the Board's conclusion.  IBr. 31-32.  But ultimately, Intel gets no further than asserting that "[b]etween Figure 2 and paragraph 34, there is substantial evidence to support the Board's finding."  IBr. 31.  Intel does not identify any expert testimony that skilled artisans would understand paragraph 34 and Figure 2 as supporting the Board's conclusion.  And no such testimony exists.  Intel also makes no reference to any such arguments below—because Intel never articulated any reason for modifying Yu's base-station implementations for a use in a mobile device.

#### 1.    No Evidence Supports The Board's Reading Of Paragraph 34

Intel fails to identify any evidence to support the Board's conclusion regarding paragraph 34.  The entirety of Intel's argument is quoting the paragraph and noting Qualcomm's recognition of that paragraph:

> Paragraph 34 expressly states that Yu's power amplifier "may e.g. be employed in wireless communications systems such as base stations of cellular communications networks or ***wireless transceivers of mobile terminals***" (*i.e.*, mobile devices), and "the like." Appx2472. As the Board noted, even Qualcomm acknowledged this disclosure.

IBr. 31 (original emphasis).  That is all.  Intel offers no citation to expert testimony, provides no evidentiary analysis, and offers no record-supported

reasoning about how skilled artisans would have understood paragraph 34 in the context of Yu's disclosure.  The "level of skill in the art is a prism or lens through which a judge or jury views the prior art."  *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999).  The reason for Intel's inability to do so is clear:  Intel never provided any developed argument explaining why paragraph 34 would have motivated skilled artisans to modify Yu's base-station implementations for use in mobile devices.

The record evidence on this issue is one-sided and decisively establishes the absence of such motivation.  Dr. Williams thoroughly analyzed Yu's teachings and provided detailed, evidence-based testimony addressing this issue.  Appx3983-3989 ¶¶63-72; Appx4014-4017 ¶¶108-114; Appx4030-4035 ¶¶139-145.  In particular, Dr. Williams's unchallenged testimony explained that skilled artisans "would recognize that, due to power constraints, *no mobile terminal at the critical date could implement* power amplifiers that cover the bandwidth described with respect to Yu Figures 3 and 4."  Appx3985 ¶68.

On its side of the ledger, Intel offered nothing and cites nothing on appeal.  The totality of Intel's mention of this issue before the Board was one sentence at the end of a footnote in its petition:

> Finally, even if Yu were directed to base stations and the claims were limited to mobile devices, it would have been obvious to a POSA to take advantage of Yu's invention in a mobile device.

Appx1267-1268 n.6. Intel's expert parroted this language in his own footnote.
Appx2397-2398 n.4. That is plainly insufficient. "To satisfy its burden of proving
obviousness, a petitioner cannot employ mere conclusory statements. The
petitioner must instead articulate specific reasoning, based on evidence of record,
to support the legal conclusion of obviousness." *In re Magnum Oil Tools Int'l,
Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016). Neither Intel nor its expert did so here.

Lacking evidentiary support, Intel falls back on pure attorney argument.
<u>First</u>, Intel criticizes Dr. Williams's interpretation of Yu's paragraph 34. IBr. 33.
According to Intel's attorneys, the "antecedent basis for '***the*** power amplifier PA'
[in paragraph 34] is found in paragraph 33, which states that 'Figure 1 depicts a
power amplifier system comprising a power amplifier PA,'" and "Figure 1 is
described in paragraphs 64 through 66 as encompassing Figures 2-4." IBr. 33.
Intel's "[u]nsubstantiated attorney argument regarding the meaning of technical
evidence is no substitute for competent, substantiated expert testimony."
*Invitrogen Corp. v. Clontech Lab'ys., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005).
And Intel's attorney argument "cannot rebut other admitted evidence." *Elbit Sys.
of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1359 (Fed. Cir. 2018). Here,
Dr. Williams's unrebutted testimony explains why skilled artisans would
understand paragraph 34 to disclose one embodiment for a mobile device

(Figure 2) and two other embodiments as only appropriate for base stations (Figures 3-4).  Appx3983-3986 ¶¶64-68.

Intel's new interpretation of Yu—hinging on attorney surmise to stitch together various disclosures (Figures 1-4 and paragraphs 33, 34, 62-64)—was never raised before the Board and is waived.  Moreover, the Board's obviousness discussion (Appx44-53) does not cite or address Figure 1 or paragraphs 33, 62-64.  Courts cannot "supply a reasoned justification for an agency decision that the agency itself has not given."  *Power Integrations*, 797 F.3d at 1326.

At most, Intel's new argument affirms Dr. Williams's analysis of paragraph 34.  Intel cites Yu's statement that the "signal processing scenarios of Figure[s] 2, 3, 4 … may selectively be employed depending on the input signals S1, S2, … and a desired frequency spacing for said input signals."  IBr. 33; Appx2475 ¶64.  Fully considering this passage, Dr. Williams explained that each of Figures 2-4 is selectively employed depending on a desired frequency spacing Δf.  Appx3983-3986 ¶¶64-68.  The Figure 2 embodiment applies when the desired frequency spacing is relatively small and could be accommodated in mobile devices.  Appx3984 ¶65.  Figures 3 and 4, by contrast, involve scenarios when "a desired frequency spacing Δf … is comparatively large" and could only be accommodated in base stations.  Appx3984-3985 ¶66.

Second, Intel contends that the Board "rejected Dr. Williams's opinion as unpersuasive given the clarity of Yu's disclosures." IBr. 34. Nothing in the Board's decision supports this supposition. The Board did not substantively address Dr. Williams's testimony explaining how skilled artisans would understand paragraph 34. Dr. Williams testified:

> Yu discloses three embodiments for implementing its functionality across Figures 2-4. Yu states that its power amplifier embodiments may "be employed in wireless communications systems such as base stations of cellular communications networks or wireless transceivers of mobile terminals." *And it is evident which of Yu's embodiments are appropriate for mobile terminals, and which can only be implemented in more robustly powered base station systems.*

Appx3983-3984 ¶64. The Board ignored this. The Board also ignored Dr. Williams's testimony that the "very different implementations" of base stations and mobile devices demonstrate that there "would not be a motivation to combine the[se] disparate technologies." Appx4014-4015 ¶108. Nor did the Board cite or address Dr. Williams's testimony explaining that Figures 3 and 4 depict base-station implementations inappropriate for mobile devices. Appx4030-4035 ¶¶139-145.

Even had the Board considered Dr. Williams's testimony, the Board never "explain[ed] why" it rejected this testimony. *In re Nuvasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016). That is problematic because the Board had no expert testimony from Intel to credit over Dr. Williams. As a result, the Board committed

reversible error because it "rejected as unconvincing *the only relevant* testimony." *Brand v. Miller*, 487 F.3d 862, 870 (Fed. Cir. 2007). Indeed, in "a contested case, it is impermissible for the Board to base its factual findings on its expertise, rather than on evidence in the record." *Id.* at 869. On the record before it, the Board could not have reached the conclusions it reached here.

Third, Qualcomm established that Yu's paragraph 34 is purely speculative and insufficient to provide a motivation to modify Yu's base-station implementations for use in mobile devices. QBr. 31-34. Relying on pure attorney argument, Intel contends that paragraph 34 "uses 'may' to mean 'can' in disclosing that Yu's power amplifier is usable in both base stations and mobile devices." IBr. 35. Intel's threadbare assertion is devoid of evidentiary support. The only record evidence on this issue demonstrates *why* paragraph 34 is speculative, including Dr. Williams's testimony explaining that (i) the power amplifiers of Figures 3 and 4 would have been "too large for use in a mobile device," and (ii) the power constraints in mobile devices foreclosed the modification. Appx3985-3986 ¶¶67-68; Appx4014-4015 ¶108. No contrary evidence exists.

### 2.    Yu's Figure 2 Refutes Intel's Position

Although Intel never made any arguments or presented any evidence about Figure 2 during the IPR, Intel now contends that the Board relied on "a mobile device implementation of the power amplifier in Figure 2" as supporting a

motivation to modify base-station implementations.  IBr. 31.  The Board's decision

is to the contrary.  The Board repeatedly stated that its determination is "based on"

paragraph 34.  Appx50; Appx52.

Intel itself chose not to raise Figure 2 in its petitions.  *See Ariosa*

*Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1367 (Fed. Cir. 2015) (noting

impropriety of relying on "previously unidentified portions of a prior-art reference

to make a meaningfully distinct contention").  Even setting that aside, the Board's

passing references to Figure 2 do not explain why that figure would have allegedly

motivated skilled artisans to modify Yu's base-station implementations for use in

mobile devices.  The Board's only sentences mentioning Figure 2 simply quote

Qualcomm's observation that Figure 2 discloses "a mobile-terminal-appropriate

system."  In the first sentence, the Board stated:

> Based on [paragraph 34], we agree with Petitioner that even if Figures
> 3 and 4 of Yu are directed to base stations (which we do not
> determine), "it would have been obvious to a [skilled artisan] to take
> advantage of Yu's invention in a mobile device." … *Indeed, Patent*
> *Owner asserts that "Yu discloses three embodiments for implementing*
> *its functionality across Figures 2-4," and that "Figure 2 of Yu*
> *discloses a mobile-terminal-appropriate system for controlling a*
> *supply voltage of a power amplifier."*

Appx50 (quoting Appx1268 n.6; Appx1421).  In the second sentence mentioning

Figure 2, the Board stated:

> [A skilled artisan] would have made any necessary modifications so
> that a mobile device could appropriately implement Yu's power
> amplifier.  *This is supported by Patent Owner's assertion that*

-11-

> *"Figure 2 of Yu discloses a mobile-terminal-appropriate system for controlling a supply voltage of a power amplifier."*

Appx50-51.

These "[c]onclusory statements … do not fulfill the agency's obligation" to provide "[r]easoned findings." *In re Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002). The fact that Figure 2 shows a mobile-device implementation provides no motivation to modify different figures showing base-station implementations. The Board's decision is devoid of any evidence or explanation as to why Figure 2 would have provided a "reason to modify Yu's base station implementations of the power amplifier to provide a mobile device implementation of the power amplifier." Appx52. The Board never attempted to bridge this critical gap. Appx50-51. And neither Intel nor its expert articulated a reason why skilled artisans would have done so. Appx1267-1268 n.6; Appx2397-2398 n.4.

Intel mischaracterizes Qualcomm's statements about Figure 2 as "admissions" regarding obviousness. IBr. 26, 30, 31. The reverse is true. Qualcomm's affirmative showing that Figure 2 "discloses a mobile-terminal-appropriate system" (Appx1420-1422; Appx3983-3985 ¶¶63-66) establishes that Figure 2 cannot be mixed-and-matched with the base-station implementations in Figures 3 and 4. Far from supporting the Board's conclusion, Qualcomm's showing that Figure 2 is a mobile-device implementation further underscores that

skilled artisans would not have modified Figures 3 and 4 for use in mobile devices because Figure 2 is already suitable for this purpose.  QBr. 27-31; Appx1511.

Attempting to backfill the Board's decision, Intel again proffers attorney argument that "Yu's implementations shown in Figure 2 (the mobile device) and Figures 3 and 4 (purportedly base stations) are very similar."  IBr. 31-32.  Intel, however, never made that argument below, and the Board did not make any such finding.  This Court "may not supply a reasoned basis for the agency's action that the agency itself has not given."  *Rovalma, S.A. v. Böhler Edelstahl GmbH*, 856 F.3d 1019, 1024 (Fed. Cir. 2017).

Intel's assertions also lack evidentiary support.  This Court holds that "[t]he similarities in transmission hardware *cannot close these gaps without* additional, reasoned analysis."  *DSS*, 885 F.3d at 1376-77.  Here, no expert opined about the alleged similarities between Yu's different figures.  The only record evidence is Dr. Williams's testimony that Figures 3 and 4 "can only be implemented in more robustly powered base station systems."  Appx3983-3984 ¶64.  Analyzing the characteristics of each figure, Dr. Williams explained that Figure 2 "discloses a mobile-terminal-appropriate system for controlling a supply voltage of a power amplifier," Appx3984 ¶65, whereas Figures 3 and 4 are "base station implementations that are not appropriate for use in mobile terminals."  Appx3984-

3985 ¶66; Appx4032-4035 ¶¶142-145 (Yu discourages using Figures 3 and 4 when frequency spacing Δf is small as in Figure 2).

**B.    Intel Never Proposed A "Similar-Devices" Theory And The Board Erred In Raising This Theory *Sua Sponte***

The Board's reliance on *KSR*'s "similar devices in the same way" principle is not adequate reasoning for a motivation to modify Yu's base-station implementations for a mobile device.  Appx50; Appx52-53.  Qualcomm's opening brief established that the Board's reference to the "similar-devices" principle lacks any supportive findings or explanation and was improperly raised *sua sponte* for the first time in its decision on remand, thus depriving Qualcomm of any notice and opportunity to respond.  QBr. 34-36.

Intel asserts that it always relied on obviousness and "Qualcomm can hardly complain about the Board's citation to the leading Supreme Court opinion on obviousness."  IBr. 35-36.  The issue is not the Board's citation to *KSR*.  Rather, the reversible error is the Board's reliance on an unpatentability theory (the "similar-devices" principle) that Intel never raised and which Qualcomm had no opportunity to address.  QBr. 34-35.  Contrary to Intel's assertion, citation to *KSR* does not imbue the Board with authority it otherwise lacks.  The law is well-settled that the Board's "authority is not so broad that it allows the PTO to raise, address,

and decide unpatentability theories never presented by the petitioner and not supported by record evidence." *Magnum Oil*, 829 F.3d at 1381.[1]

Equally important, because Intel and its expert never raised the "similar-devices" theory, there is no record evidence to support the Board's application of that theory. And the Board cited none. On appeal, Intel offers unsupported attorney assertion that "Yu itself amply demonstrates the similarities between base stations and mobile devices." IBr. 36. This does not suffice, and such attorney argument cannot rebut Qualcomm's uncontroverted *evidence* establishing that mobile devices and base stations are *not* similar for the purposes of the technology at issue. Appx3985-3986 ¶¶67-68; Appx4014-4015 ¶¶108-109.

Moreover, application of the "similar-devices" rationale requires more than just a showing of "similarities between base stations and mobile devices." IBr. 36. It requires evidence of skilled artisans' understanding that Yu's base-station teachings would "improve [mobile] devices in the same way," and evidence showing that the application of Yu's base-station teachings to mobile devices

---

[1] The Board's decision includes several conclusory statements unrelated to any arguments advanced by Intel. Appx52-53 ("similar-devices" theory); Appx50 (statements regarding bodily incorporation); Appx50-51 (conclusion that Figure 2 provides a reason to modify the base-station implementations); Appx50 (statement that "ordinary creativity" would have motivated skilled artisans to make "any necessary modifications so that a mobile device could appropriately implement Yu's power amplifier").

would have been within the ordinary skill. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007). Such evidence is entirely absent as are any supportive findings by the Board.

Deflecting from the one-sided record, Intel relies on the truism that the "question is not whether substantial evidence supports Qualcomm's preferred alternative factual findings." IBr. 36. Intel misses the point as that was never Qualcomm's argument. Qualcomm presented extensive evidence establishing that mobile devices and base stations are not similar for the purposes of the technology at issue. Appx3983-3989 ¶¶63-72; Appx4014-4017 ¶¶108-114; Appx4030-4035 ¶¶139-145. By contrast, Intel presented *no* evidence about the alleged "similarities between base stations and mobile devices" (IBr. 36), nor did Intel present any evidence on the other showings necessary for the "similar-devices" theory. Substantial-evidence review must "tak[e] into account evidence that both justifies and detracts from an agency's decision." *Gartside*, 203 F.3d at 1312. Here, there is no evidence that justifies the Board's "similar devices" conclusion, and there is a vast amount of unrebutted testimony detracting from it.

### C. The Board's Discussion Of Bodily Incorporation Is Irrelevant And Incorrect

Citing objective documentary evidence, Qualcomm and Dr. Williams established that the "technology used for implementing a base station is 'very different' than the technology used for implementing a mobile device," such that

-16-

there "would not be a motivation to combine the[se] disparate technologies." Appx3985-3986 ¶¶67-68; Appx4014-4015 ¶108; Appx4016 ¶112 (quoting Appx2517).  Without any explanation, the Board summarily brushed aside this evidence with an overly-broad application of bodily incorporation, stating that "the test for obviousness is not whether the features of a secondary reference [or embodiment] may be bodily incorporated into the structure of the primary reference [or embodiment]."  Appx50.  That was error—Qualcomm never argued patentability based on the physical incompatibility of Yu's base-station implementations with mobile devices, *see* QBr. 51-53—and Intel's attempts to rehabilitate the Board's decision fail.   IBr. 43-44.

Intel points to one page from Qualcomm's patent owner response brief (Appx1422) and one page from Dr. Williams's declaration (Appx3985) to assert that "Qualcomm's arguments and Dr. Williams's testimony are based on the hypothetical incorporation of the components of Figures 3 and 4 in a mobile device." IBr. 43.  A straightforward reading demonstrates that neither of Intel's citations concerns bodily incorporation.  Both related to the "difficulties of applying base-station PA [power amplifier] concepts to mobile handset PAs" and cost considerations that would have deterred skilled artisans from making the modification.  Appx1422; Appx3985.  The Court holds that "merely request[ing] that [patent challenger] explain why it would have been obvious to replace [one

component of the prior art] with [another known component]" does not invoke bodily incorporation.  *TriVascular, Inc. v. Samuels*, 812 F.3d 1056, 1067-69 (Fed. Cir. 2016); *see Vicor Corp. v. SynQor, Inc.*, 706 F. App'x 673, 677 (Fed. Cir. 2017) ("We disagree that the Board [required bodily incorporation].  The Board instead opined that [petitioner] failed to prove that [skilled artisans] would be able to incorporate controlled rectifiers into Pressman in view of Kassakian.").

Intel never addresses why technical infeasibility and cost are irrelevant to obviousness.  And they are not.  "The evidence that the combination was not viewed as technically feasible must be considered." *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 958 (Fed. Cir. 1997); *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1353 (Fed. Cir. 2011) ("[T]he fact that a combination is expected to increase cost has some bearing on the obviousness of that combination.").

## II.    EVEN IF A REASON TO MODIFY YU EXISTED, THE BOARD'S OBVIOUSNESS ANALYSIS IS LEGALLY ERRONEOUS AND LACKS SUBSTANTIAL EVIDENCE

Even if Yu provided a reason to modify its base-station implementations for use in mobile devices, the Board's unpatentability determination is legally incorrect and devoid of evidentiary support.  QBr. 38-56.  Without any reasoned analysis or evidentiary citations, the Board provided three sentences by which it summarily concluded that skilled artisans using "ordinary creativity" "would have

made any necessary modifications so that a mobile device could appropriately implement" Yu's base-station implementation.  Appx50-51; QBr. 40-44.

The Board never made any evidence-based findings explaining what those "necessary modifications" would be, never articulated how skilled artisans would make such unidentified modifications, and never addressed how such modifications would achieve the claimed invention with a reasonable expectation of success.  The Board's cursory statements would receive no weight as expert testimony, and they are equally inadequate to sustain an obviousness determination.  The "board cannot rely on conclusory statements" when addressing obviousness.  *Lee*, 277 F.3d at 1345.

Conceding the absence of findings as Qualcomm's brief showed, Intel attempts to excuse the Board's analytical and evidentiary shortcomings with a series of attorney arguments that are legally and factually erroneous.  IBr. 37-45.  Intel's arguments underscore the fatal deficiencies in the Board's decision.

### A.    Intel Erroneously Asserts That "Context" Somehow Relieved The Board From Providing A Reasoned Explanation With Evidence-Based Findings

Intel repeatedly contends that the Board did not need to provide various analysis and findings given the "context" of this case.  IBr. 26, 38-39, 44.  That is self-evidently incorrect.  Every agency decision must "present a full and reasoned explanation" and "must set forth its findings and the grounds thereof, as supported

by the agency record." *Lee*, 277 F.3d at 1342. "Reasoned findings are critical to the performance of agency functions and judicial reliance on agency competence." *Id.* at 1344. Regardless of "context," the obviousness "analysis should be made explicit." *KSR*, 550 U.S. at 418. Contrary to Intel's assertion that "Qualcomm overstates what the Board must do to support its obviousness determination" (IBr. 38), the Board's obligation to comply with the APA and substantive law does not vary based on "context."

Moreover, this Court previously recognized that the "context" here— wireless communications between base stations and mobile devices—involves technology that is neither "unusually simple" nor "particularly straightforward." *DSS*, 885 F.3d at 1375. In *DSS*, this Court held that the "the Board's final written decisions fail to provide sufficient explanation for its obviousness finding" because it offered "one paragraph" summarily concluding that skilled artisans "would have been motivated to modify [a prior-art reference disclosing a mobile device] to incorporate … technique[s] into a base unit transmitter and that such a modification would have been within the skill of the ordinarily skilled artisan." *Id.* at 1374-75. In *DSS*, the "Board made no further citation to the record" and "referred instead to the 'ordinary creativity' of the skilled artisan." *Id.* at 1375.

As Qualcomm explained (QBr. 43-44), the Board's decision here does no more than the decision this Court reversed in *DSS*. Intel attempts to sidestep *DSS*'s

decisive reasoning by mischaracterizing the case as dealing only with a missing

limitation from the prior art.  IBr. 41.  As explained below, Intel is wrong.

**B.    Intel's Efforts To Distance The Board From Relying On Ordinary Creativity Underscore The Reversible Legal Errors**

Intel's assertion that the Board did not rely on "ordinary creativity" is

demonstrably incorrect.  IBr. 41-42.  In the few sentences that the Board did offer,

it stated that a skilled artisan is "a person of ordinary creativity," and from that

concluded that such a person "would have made any necessary modifications so

that a mobile device could appropriately implement Yu's power amplifier."

Appx50.

Intel's argument that there is no "missing limitation" for which the Board

relied on "ordinary creativity" (IBr. 42) is equally wrong.  The missing

limitation—which Intel recognizes is the "crux of the dispute" (IBr. 27)—is

whether it would have been obvious to modify Yu to achieve "a plurality of carrier

aggregated transmit signals" that requires "increas[ing] bandwidth for *a user*."

Appx38.  In fact, the Board relied on "ordinary creativity" for both the missing

limitation and for the undescribed "necessary modifications" that skilled artisans

would purportedly make.  Appx50.  The Board concluded that "even if Figures 3

and 4 of Yu are directed to base stations," skilled artisans would use "ordinary

creativity" to make "any necessary modifications" to achieve mobile-device

implementations, thus supplying the "plurality of carrier aggregated transmit

signal" limitation. Appx50. In such circumstances, this Court "repeatedly warn[s] that references to 'common sense'—whether to provide a motivation to combine or supply a missing limitation—cannot be used as a wholesale substitute for reasoned analysis and evidentiary support." *DSS*, 885 F.3d at 1374. Invoking "ordinary creativity" to modify a reference is no different. *Id.*; *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361-62 (Fed. Cir. 2016).

Lacking evidentiary support for the Board's cursory reference to "ordinary creativity," Intel again resorts to pure attorney argument. Intel offers attorney supposition that Yu's different implementations "overlap substantially." IBr. 42. Intel cites no expert evidence and none exists. As this Court holds, any "similarities in transmission hardware *cannot close these gaps without* additional, reasoned analysis." *DSS*, 885 F.3d at 1376-77 (addressing base stations and mobile devices). That reasoning applies with special force here given Dr. Williams's unchallenged testimony "illustrat[ing] the difficulties of applying base-station PA [power amplifier] concepts to mobile handset PAs." Appx3985 ¶68.

Intel also offers attorney surmise that the Board's decision "makes sense given that Yu contemplates modifying frequency spacings." IBr. 42. Again, Intel cites no expert testimony because none exists. Instead, this is a new theory (fueled entirely by attorney argument) that was never raised below, and the Board's decision neither relies on it nor makes any supporting findings. Accordingly, this

theory cannot "supply a reasoned justification for an agency decision." *Power Integrations*, 797 F.3d at 1326. Intel's new theory is also directly refuted by the record. As explained above and in the opening brief, Dr. Williams's testimony establishes that Yu's base-station technologies are fundamentally different from, and not transferable to, mobile-device implementations. Appx3983-3989 ¶¶63-72; Appx4014-4017 ¶¶108-114; Appx4030-4035 ¶¶139-145. Nothing in the record refutes Dr. Williams's testimony.

### C. Intel Concedes That The Board's Decision Lacks Necessary Findings On Reasonable Expectation Of Success

An obviousness determination "requires that a skilled artisan would have perceived a reasonable expectation of success" when modifying the prior art. *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009). Qualcomm established that "[e]ven assuming that [skilled artisans] might have some motivation" to modify Yu, "the record does not show any reasonable expectation that this significant change would be successful." *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1335 (Fed. Cir. 2013) (discussed at QBr. 54-55).

Intel concedes that the Board did not make any findings about reasonable expectation of success. IBr. 44. Intel seeks to minimize this reversible error by asserting that "Qualcomm takes too rigid a view of obviousness," any findings about this requirement "depend[] on context," and the absence of findings can be "subsumed" under the motivation to combine. IBr. 44. Intel's arguments

contravene well-settled precedent: "It was [Intel's] burden to demonstrate both that [1] a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and [2] that the skilled artisan would have had a reasonable expectation of success in doing so." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367-68 (Fed. Cir. 2016); *see Netflix, Inc. v. DivX, LLC*, No. 2022-1043, 2023 WL 3115576, at *5 (Fed. Cir. Apr. 27, 2023) (requiring Board "to determine whether a skilled artisan would have been motivated to combine the relevant teachings … with a reasonable expectation of success").

Intel attempts to "conflate[] two different legal concepts—reasonable expectation of success and motivation," *Intelligent Bio-Sys.*, 821 F.3d at 1367-68—and fundamentally misapplies the law by converting this Court's requirements into purportedly permissive suggestions that the Board need not follow. Indeed, while Intel asserts that Qualcomm seeks a "heightened standard for obviousness" (IBr. 38), the truth of the matter is that Intel tries to defend the Board's decision by eliminating essential aspects of the obviousness inquiry. Likewise, Intel's suggestion that a reasonable expectation of success need not be shown "[w]hen all the relevant disclosures are located within a single prior art reference" (IBr. 45) lacks supporting authority and is wrong. An obviousness determination *always* requires a reasonable expectation of success. *Amgen*, 580 F.3d at 1362.

**D.    Intel's Remaining Arguments Cannot Support The Board's Legally Deficient Decision**

***Intel Creates A New "Sliding Scale" For The Weight To Be Given To Conclusory Expert Opinion.***  Intel makes no attempt to defend its expert testimony as anything other than conclusory.  Nor can it because the sum total of Dr. Choi's opinion was one sentence: "even if Yu were directed to base stations and the claims were limited to mobile devices, it would have been obvious to a [skilled artisan] to take advantage of Yu's invention in a mobile device."  Appx2397-2398 n.4.  Instead, Intel argues that such conclusory testimony, though inadequate under the clear-and-convincing standard, somehow suffices for the preponderance-of-the-evidence standard in IPRs.  IBr. 40.  That is plainly wrong.  An expert's "conclusory statements and unspecific [] testimony are insufficient to *support the Board's findings*."  *DSS*, 885 F.3d at 1376.  "Conclusory expert testimony does not qualify as substantial evidence."  *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019).

***Intel Cannot Avoid Binding Principles For An Obviousness Analysis Because It Relies On Multiple Embodiments In One Reference Rather Than Embodiments From Different References.***  Having no substantive answer to the controlling precedent and legal principles discussed in Qualcomm's brief, Intel tries to sweep away that case law as inapplicable because Yu is a single reference.  IBr. 38-39.  Notably, Intel cites no authority for this novel argument, and none

exists. This Court instructs that while "a single prior art reference can render a claim obvious," "*there must be a showing of a suggestion or motivation to modify the teachings* of that reference to the claimed invention in order to support the obviousness conclusion." *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000). And that is what is missing from both the Board's decision and the record evidence. Accordingly, "[w]hether a rejection is based on combining disclosures from multiple references [or] *combining multiple embodiments from a single reference* … there *must be* a motivation to make the combination and a reasonable expectation that such a combination would be successful." *In re Stepan Co.*, 868 F.3d 1342, 1346 n.1 (Fed. Cir. 2017); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1324 (Fed. Cir 2008) ("perfunctory argument that it would have been obvious" is insufficient for single-reference obviousness).

## III.   INTEL CANNOT SHOW ANY ERROR IN THE BOARD'S CLAIM CONSTRUCTION

Unable to meaningfully defend the Board's determination on the Yu-based grounds, Intel seeks an alternative ground for affirmance by contending that the Board incorrectly construed a "plurality of carrier aggregated transmit signals" to mean "signals for transmission on multiple carriers at the same time to increase the bandwidth for a user." IBr. 45-61. The claim-construction dispute focuses on the last part of the construction: "increase the bandwidth for a user." Appx32-33.

Intel's entire claim-construction argument criticizes the Board for adopting *the exact same* construction that Intel itself advocated in all six petitions. *E.g.*, Appx1255; Appx4275-4276; Appx7551. Intel is estopped from arguing that the Board erred in adopting the construction Intel advanced.

Intel also represented that its originally-proposed construction is the broadest reasonable interpretation: "This Petition … applies the [proposed] construction [] *as the broadest reasonable interpretation for purposes of analysis* under Rule 42.100." *E.g.*, Appx1255; Appx4275-4276; Appx7551. Intel was equally unequivocal that there is no lexicography in the '675 Patent for this limitation: "*[W]e're not dealing with any kind of lexicography* or disavowal here." Appx1648, 10:5-17.

Nothing in the four corners of the '675 Patent or the intrinsic evidence has changed since Intel made those representations. Yet on remand and on appeal, Intel has changed its mind. Intel now contends that there is lexicography defining the term "plurality of carrier aggregated transmit signals"—which is a term of art rather than a coined term—to mean something different than its ordinary meaning. The two disparate sentences that Intel cites for lexicography do not remotely approach the demanding standard of showing that the applicant clearly intended to redefine the term.

The entirety of the intrinsic and extrinsic evidence establishes that the Board's construction—the same construction that Intel advanced in its petitions—is the ordinary meaning.

### A. Intel Is Estopped From Challenging The Very Same Construction On Which It Based Its Petitions

Intel is estopped from challenging the Board's construction because it is the identical, word-for-word construction that Intel proposed in its petitions. Intel cannot advance a construction in its petitions and later fault the Board for adopting that exact construction. *See Intel Corp. v. XMTT, Inc.*, No. 2021-2127, 2022 WL 1152312 (Fed. Cir. Apr. 19, 2022).

Intel's petitions stated that the "broadest reasonable interpretation" of the term "plurality of carrier aggregated transmit signals" is "signals for transmission on multiple carriers at the same time to increase the bandwidth for a user." *E.g.*, Appx18; Appx1255; Appx4275-4276. In the second set of Final Written Decisions, the Board construed "plurality of carrier aggregated transmit signals" exactly as advocated by Intel's petitions. Appx38; Appx148-149.

This Court has long recognized that "[t]he impropriety of asserting a position which the trial court adopts and then complaining about it on appeal *should be obvious on its face*." *Key Pharms. v. Hercon Lab'ys Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998). This Court explained:

Allowing parties in a patent suit to assert "error" in such situations
would *open the door to mischief* and judicial inefficiency.  For
example, a party could advocate a certain claim construction at trial
believing that that claim construction will result in favorable
resolution of infringement or validity issues.  If the trial court adopts
that claim construction but resolves the infringement or validity issues
unfavorably, the party could thereafter assert a new claim construction
to get the proverbial "second-bite," possibly necessitating a retrial.

*Id.*  That is precisely what Intel does here.  In such circumstances, "doctrines of
estoppel, waiver, invited error, or the like would prohibit a party from asserting as
'error' a position that it had advocated at the trial." *Id.*

This is not the first time that Intel has criticized the Board's adoption of a
claim construction for which Intel itself advocated.  In a recent case presenting a
similar issue, this Court estopped Intel from challenging a construction for which
Intel had argued during IPR proceedings:

Intel is judicially estopped from raising its claim construction
argument. *The Board adopted the claim construction for which Intel
advocated.  Yet, Intel now changes its position and advocates for a
claim construction that is clearly inconsistent* with its position before
the Board.  Intel is judicially *estopped from raising this argument.*
We need not consider Intel's argument that [the prior-art reference]
discloses the disputed claim limitations under its new construction.

*XMTT*, 2022 WL 1152312, at *1.  The same reasoning and result apply with equal

force here.  Intel cannot challenge the Board's adoption of the same construction

on which Intel based its petitions.

**B.     As Intel Previously Conceded, There Is No Lexicography**

When advocating for the claim construction in its petitions, Intel was unequivocal about the absence of lexicography regarding the term "plurality of carrier aggregated transmit signals."  Intel made crystal clear:  "*[W]e're not dealing with any kind of lexicography* or disavowal here."  Appx1648, 10:5-17.  Now, however, Intel takes the opposite position and asserts that the applicant redefined a term of art.  IBr. 51.  Not only do Intel's prior representations contradict its argument, but Intel fails to address, much less satisfy, the "exacting" lexicography standard requiring that "a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning and must clearly express an intent to redefine the term."  *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

There is a "'heavy presumption' that claim terms carry their accustomed meaning in the relevant community at the relevant time."  *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004).  As explained below, the term "carrier aggregated transmit signals" has a well-understood meaning to skilled artisans.  Absent "something exceptional" to "supplant[] that understanding," there is no lexicography.  *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 737 (Fed. Cir. 2014).  Intel fails to identify anything "exceptional" in the '675 Patent to deviate from the ordinary meaning.  Instead, Intel cobbles

together two different sentences—one using the phrase "carrier aggregation" and another using the phrase "transmit signal"—to argue that the applicant redefined "carrier aggregated transmit signals." IBr. 51. The disparate sentences do not demonstrate any lexicography.

First, when the '675 Patent sought to define a term, it used an unmistakable format. It put the defined term in quotation marks, followed by the phrase "is used herein to mean," followed by the definition in quotation marks. *See Sinorgchem Co., Shandong v. ITC*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) (noting that quotation marks are "a strong indication" of lexicography). The '675 Patent uses this format to define the word "exemplary:"

> The word "exemplary" is used herein to mean "serving as an example, instance, or illustration."

Appx337, 2:10-11.

The sentences on which Intel relies do not resemble or apply that format. Appx337, 2:63-63; Appx338, 3:60-62. Neither sentence uses quotation marks to set off terms or definitions, nor does either sentence use the phrase "is used herein to mean." The absence of the definitional format used elsewhere in the '675 Patent strongly indicates that the applicant had no intention of redefining the ordinary meaning of "plurality of carrier aggregated transmit signals." *See Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) (holding that word "is" was not lexicographic given the patent's use of the definitional format: "'[term]' as

-31-

used herein, means….").

The analysis in *Medicines Co. v. Mylan, Inc.* is instructive.  853 F.3d 1296,

1306 (Fed. Cir. 2017).  Rejecting the argument that an applicant acted as a

lexicographer, this Court noted that the specification defined certain terms by

placing "the defined term in quotation marks, followed by the term[] … 'as defined

herein.'"  *Id.*  This Court explained that the patent's departure from this

definitional format when discussing the disputed claim term demonstrated the

absence of "intent necessary for a patentee to act as its own lexicographer."  *Id.*

Similarly, the two sentences on which Intel relies "lack[] the clear expression of

intent necessary" for lexicography.  *Id.*

Second, the two sentences are at variance with each other and cannot show

that the applicant acted as a lexicographer.  *See Cephalon, Inc. v. Abraxis

Bioscience, LLC*, 618 F. App'x 663, 667 (Fed. Cir. 2015) (holding no lexicography

because "inconsistent" statements "do not clearly set forth *a definition* of the

disputed claim term").  While the "carrier aggregation" sentence is directed to

*multiple* carriers, the "transmit signal" sentence includes transmission on *one*

carrier.  *Compare* Appx337, 2:63-64, *with* Appx338, 3:60-62.  These varied

statements dispel Intel's assertion that the applicant intended to redefine "carrier

aggregated transmit signals" differently from its ordinary meaning.  *See Abbott*

*Lab'ys v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355 (Fed. Cir. 2003) (holding no lexicography when alleged definitional statements were not consistent).

Third, Intel cites no authority for finding lexicography based on stitching together separate sentences in a patent. That is not surprising because lexicography requires that a "patentee must clearly set forth a definition." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016). Intel's reliance on a patchwork of distinct sentences does not "clearly express an intent to redefine the term." *Hill-Rom*, 755 F.3d at 1371. The first sentence at 2:63-64 describes an attribute of "carrier aggregation"—"operation on multiple carriers"—but does nothing to redefine the term. Appx337. The second sentence at 3:60-62, far from being definitional, uses the open-ended term "etc." Appx338. This incomplete sentence provides neither an unambiguous definition nor any intent to redefine the term. "[L]exicography must, of course, appear with reasonable clarity, deliberateness, and precision." *Abbott Lab'ys*, 334 F.3d at 1354. Neither sentence (alone or in combination) "explains and defines a term … without ambiguity or incompleteness." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998).

Fourth, contrary to Intel's premise, use of the word "is" in both sentences does not amount to a definitional format. This Court has never endorsed a hard-and-fast rule that "is" conveys lexicographic intent. Intel also wrongly asserts that

the word "is" "often signifies" lexicography.  IBr. 51.  At most, "the word 'is' *may signify* that a patentee is serving as its own lexicographer" depending on other confirmatory circumstances that are absent here.  *Abbott*, 473 F.3d at 1210-11 (holding no lexicography because the word "is" "does not as unambiguously signify that the description provided is definitional"); *Sinorgchem*, 511 F.3d at 1136 (explaining same and finding lexicography because defined term was "set off by quotation marks").  At bottom, the two sentences cited by Intel are neither definitional nor use "words of manifest exclusion or restriction" that could justify deviating from the ordinary meaning.  *Hill-Rom*, 755 F.3d at 1372.

### C.    The Board's Construction Is The Ordinary Meaning

Carefully scrutinizing both parties' arguments, the Board provided a detailed, 22-page claim construction analysis.  Appx16-38.  Applying this Court's settled methodology, the Board considered the totality of the intrinsic evidence—including the claim language, specification, prosecution history, and cited prior art—and evaluated the extrinsic evidence—including prior art and expert testimony.  The Board's construction of "plurality of carrier aggregated transmit signals" reflects the term's ordinary meaning of "signals for transmission on multiple carriers at the same time to increase the bandwidth for a user."

### 1.    Intrinsic Evidence Supports The Board's Construction

In analyzing the intrinsic evidence, the Board properly considered the specification of the '675 Patent, which specifically invokes the 3GPP Technical Specification LTE Release 11 when discussing carrier aggregation.  Appx337, 2:58-67; Appx34.  "When prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to persons skilled in the art, but also that the patentee intended to adopt that meaning."  *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1045 (Fed. Cir. 2000).  The 3GPP Technical Specification is intrinsic evidence that is highly probative of the ordinary meaning of "carrier aggregated transmit signals."  The technical specification concerns "RF characteristics and minimum performance requirements for E-UTRA User Equipment (UE)" and includes a "Definitions" section that explicitly defines "carrier aggregation":

> **Carrier aggregation**:  Aggregation of two or more component carriers in order to support wider transmission bandwidths.

Appx20882.  As the Board explained, this definition establishes that "increas[ing] the bandwidth for a user" is part of the term's ordinary meaning.  Appx33-34.

Intel concedes that "[t]he 3GPP technical report defines carrier aggregation" and does not dispute that it provides the term's ordinary meaning.  IBr. 55. Instead, Intel contends that the definition provides that carrier aggregation "may"

support wider transmission bandwidths.  IBr. 55.  To the contrary, nothing in the

definition uses the conditional "may."  The definition explicitly states that carrier

aggregation "support[s] wider transmission bandwidths."  Appx20882.

The specification of the '675 Patent aligns with this definition, describing

carrier aggregation as combining transmissions on carriers to increase bandwidth

for a user.  The '675 Patent describes a user device (*i.e.*, wireless device 110) that

"support[s] carrier aggregation" by being "configured with up to 5 carriers in one

or two bands."  Appx337, 2:63-67.  The user device's ability to aggregate up to

these five carriers provides increased bandwidth over a single, non-aggregated

carrier.  Similarly, Figures 2A to 2D depict four examples of carrier aggregation.

Appx328.  Each figure illustrates aggregating three carriers to deliver data using a

single virtual channel, which has the equivalent of three times the bandwidth of a

non-aggregated carrier.  Thus, whereas user devices of earlier LTE systems were

limited to, for example, the 20MHz bandwidth of a single channel (Appx337, 2:59-

60), carrier aggregation increases bandwidth for the user by aggregating up to five

20MHz channels into a single virtual channel with bandwidth up to 100 MHz.

Appx337, 2:65-67.

The Board also explained that the file history supports construing carrier

aggregation as increasing bandwidth for a user.  During prosecution, the Examiner

cited U.S. Patent Pub. No. 2012/0321018 A1 to Chen.[2]  Appx2142-2143;

Appx20886.  The Chen publication describes carrier aggregation as providing

increased bandwidth: "bandwidth of a signal constantly increases due to multi-

carrier applications."  Appx20895, ¶4.  Such prior art cited during prosecution "can

have particular value as a guide to the proper construction of [a] term."  *V-*

*Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005).

Contrary to Intel's assertions (IBr. 56), this Court has never required that the

examiner or applicant specifically discuss cited prior art during prosecution—much

less address precise passages in those references—for the art to be considered in a

claim-construction analysis.  Rather, "prior art … whether or not cited in the

specification or file history … can often help to demonstrate how a disputed term

is used by those skilled in the art."  *Am. Radio LLC v. Qualcomm Inc.*, 578

F. App'x 975, 980 (Fed. Cir. 2014).  Here, the Board correctly reasoned that

regardless of whether the 3GPP Technical Specification and the Chen publication

were expressly discussed during prosecution, it "does not change what is taught" in

those references.  Appx35.

Citing *Braintree Laboratories, Inc. v. Novel Laboratories, Inc.*, 749 F.3d

1349 (Fed. Cir. 2014), Intel contends that the Board's construction improperly

---

[2] The Chen publication is different from the reference for the Chen-based grounds.

imported an objective or potential result.  IBr. 56-58.  The Board determined that

this argument "is misplaced" for several reasons.  Appx36.  To start, Intel itself

advanced the same construction—including the "increase the bandwidth for a user"

language—that the Board adopted.  Appx18.  Intel also wrongly asserts that "the

Board's discussion of *Braintree* completely skips over the '675 patent's definitions

of carrier aggregation and transmit signals, instead relying entirely on extrinsic

evidence."  IBr. 58.  The Board specifically considered the intrinsic evidence and

explained that the claims require "*carrier aggregated* transmit signals."  Appx36

(original emphasis).  The Board credited the definition of "carrier aggregation"

from the 3GPP Technical Specification, which defines "carrier aggregation"

"*support[ing] wider transmission bandwidths*."  Appx36 (original emphasis)

(quoting Appx20882).  The Board also analyzed the Chen publication, noting that

the "*bandwidth of a signal constantly increases* due to multi-carrier applications."

Appx36 (original emphasis) (quoting Appx20895).  The Board further confirmed

that its construction was supported by the extrinsic evidence.  Appx36.  Contrary to

Intel's assertions, the evidence establishes that "increas[ing] the bandwidth for a

user" is a characteristic of carrier aggregation rather than aspirational.[3]

---

[3] Intel raises several irrelevant claim-construction arguments.  Intel argues against
including various terms in the construction (*e.g.*, "component" and "from a single
terminal") that neither party advances.  IBr. 45-48.  And the Board explained that
Intel's arguments concerning the phrase "at the same time" are not pertinent to the

### 2.    Extrinsic Evidence Supports The Board's Construction

Contemporaneous extrinsic evidence also supports the Board's construction. The Board analyzed Intel's own U.S. Patent No. 9,161,254, which states that "[o]ne technique for *providing additional bandwidth capacity* to wireless devices *is through the use [of] carrier aggregation* of multiple smaller bandwidths to form a virtual wideband channel at a wireless device (*e.g.*, UE)."[4]  Appx20944, 3:19-22; Appx34.  Intel's patent further states that "[c]arrier aggregation … enabl[es] more bandwidth to be obtained."  Appx20944, 3:49-51.  Other Intel patents provide similar teachings.  Appx20971, 3:27-62.

The Board also evaluated a Qualcomm paper from 2013, explaining that "[c]arrier aggregation, as the name suggests, combines multiple carriers (a.k.a. channels) at the device *to provide a bigger data pipe to the user*."  Appx20924; Appx34-35.  The Board found that this "contemporaneous extrinsic evidence introduced into the record" is "consistent" with the construction that follows from the intrinsic record.  Appx34-35.  These findings adhere to this Court's guidance

---

disputed issues.  Appx33 n.22; IBr. 50.  This Court need not address those issues to construe the claims "only to the extent necessary to resolve the controversy."  *Vivid Techs., Inc. v. Am. Sci. & Eng., Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

[4] The '254 patent application was filed on May 3, 2013, less than three months after the filing of the '675 Patent application, and it claims priority to a provisional application filed on September 28, 2012, months before the filing of the '675 Patent application.  Appx20929.

that "the PTO's interpretation of claim terms should not be so broad that it

conflicts with the meaning given to identical terms in other patents from analogous

art." *In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir. 1999) (noting that prior art

"may be indicative of what all those skilled in the art generally believe a certain

term means"). As the Board explained, "[o]n the record now before us, we

determine that our previous construction … is overly broad." Appx30.

Attempting to distinguish the extrinsic evidence, Intel relies on its expert

statement that while carrier aggregation can increase bandwidth, it "need not do

so." IBr. 59-60 (quoting Appx20849). Dr. Choi testified that "aggregating two 5

MHz carriers from different bands 'would only result in 10 MHz,' which is not

increased bandwidth when 'compared with the bandwidth of a single, non-

aggregated' carrier at 15 or 20 MHz." IBr. 59 (quoting Appx20852-20853).

Intel's comparison of two aggregated 5 MHz carriers to a single non-aggregated 15

MHz carrier is misguided. The proper comparison is a carrier before and after

aggregation. Dr. Choi admits that a proper comparison increases bandwidth:

> LTE explicitly allows for transmission of *two aggregated 1.4 MHz
> signals*, even though the standard can also transmit a single 20 MHz
> carrier, which provides much higher bandwidth than the *combined
> bandwidth of 2.8 MHz*…. [C]arrier aggregation can achieve higher
> data rates and can increase the overall capacity of wireless networks
> by allowing network operators to exploit fragmented spectrum
> allocations…. *Aggregating two narrow band signals could do
> precisely that–increasing bandwidth by using fragmented spectrum
> allocations.*

Appx37 (original emphasis) (quoting Appx3814, ¶25).  The Board also addressed

Dr. Choi's testimony that:

> So I think you're asking me if you were to *aggregate these two 5-megahertz carriers for a resultant total aggregated bandwidth of 10 megahertz*, would that be greater than if you were just to have a single 5-megahertz carrier.  And *the answer's obviously, yes* because ten is greater than five.

Appx37 (original emphases) (quoting Appx21238, 28:2-24).  Assessing this

testimony, the Board found that carrier aggregation "necessarily increases the

bandwidth for a user as compared to a *single 5-MHz carrier* allocated to the user."

Appx37 (original emphasis) (quoting Appx20289).

After considering all the extrinsic evidence, the Board found that it supports

and confirms that carrier aggregation increases bandwidth for a user.  Appx22;

Appx26-30; Appx34-38.  The Board's findings are reviewed for substantial

evidence, *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808 (Fed. Cir. 2021), and

Intel fails to show any reason to displace them.

### D.     Intel's Newly-Proposed Construction Reads "Aggregated" Out Of The Claim Language

Intel's new construction is wrong because it reads the term "aggregated" out

of the phrase "carrier aggregated transmit signals."  Aggregation refers to

combining constituent parts into a single thing.  Appx21210 (defining

"aggregation" as "the collecting of units … into a mass or whole").  Though Intel's

new construction refers to "multiple carriers," it gives no meaning to the term

"aggregated" because it does not require *combining* these carriers (or combining anything at all). That result contravenes the basic rule "that claim language should not be treated as meaningless." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006). Intel's new construction merely provides for the "transmission on multiple carriers," which would include transmitting disparate signals on different carriers to separate destinations without anything being aggregated.

Intel contends that its newly-proposed construction does not erase "aggregated" because the claims require aggregation by also reciting that the apparatus "produce[s] a single output radio frequency (RF) signal." IBr. 53-54. The Board considered and soundly rejected this argument, reasoning that "if producing a single output RF signal were to account for 'aggregated,' … then 'aggregated' would be rendered superfluous." Appx32.

The Board further recognized that, during prosecution, the applicant overcame prior-art rejections by amending claims to add "carrier aggregated" even though the claims already recited "to produce a single output [radio frequency] RF signal." Appx31; Appx2110; Appx2113-2117; Appx2119. While Intel ignores these claim amendments (IBr. 54), the prosecution underscores that Intel's new construction improperly excises "aggregated" from the claims. The Board correctly reasoned that "[t]he amendment limiting the recited signals to 'carrier aggregated' signals indicates that the claims *require something more than just*

*signals for transmission on multiple carriers*; otherwise, the claims would encompass signals that are *not* carrier aggregated." Appx31.

Intel also takes issue with the Board's citation to the '675 Patent's statement that "[m]ultiple transmit signals may be sent on different frequencies (e.g., different carriers) and hence may have increased envelope bandwidth." IBr. 54 (citing Appx32 (quoting Appx339, 6:10-12)). Contrary to Intel's assertion, the Board cited that statement as an example of signals that are not necessarily carrier aggregated. Appx31-32. The Board correctly reasoned that, as the claims were amended to recite "carrier aggregated" transmit signals, they "require something more than just signals for transmission on multiple carriers." Appx31.

Intel incorrectly states that "the Board admitted that 'neither the Examiner nor the applicant explicitly expressed an understanding that carrier aggregation requires increased bandwidth.'" IBr. 54-55. The Board rejected that argument, explaining that the 3GPP Specification cited in the '675 Patent defines "carrier aggregation" as providing "wider transmission bandwidths." Appx34-35.

Unlike Intel's newly-proposed construction, the Board's construction correctly gives meaning to the term "aggregated."

### E.    The Board Correctly Found That "User" In The Claim Construction Does Not Encompass A Base Station

Intel wrongly asserts that the term "user" in the Board's construction encompasses a base station. IBr. 28-29. Intel's argument fails because: (1) Intel

-43-

waived the argument by not presenting it in any detail, and (2) the Board's analysis is supported by the intrinsic and extrinsic evidence.

First, a party "forfeit[s] any argument on appeal" when it "fail[s] to present anything more than a conclusory, skeletal argument." *In re Killian*, 45 F.4th 1373, 1386 (Fed. Cir. 2022). Here, Intel merely lobs a scattershot of cursory arguments unaccompanied by any developed reasoning or explanation. IBr. 28-29. "In order for this court to reach the merits of an issue on appeal, it must be adequately developed." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006).

Second, the intrinsic and extrinsic evidence confirms that "user" does not encompass a base station. As the Board explained, "the '675 patent distinguishes between wireless device 110 (which may be referred to as a *user* equipment) and base stations 130 and 132." Appx48-49 (original emphasis). Specifically, the '675 Patent uses the term "user equipment (UE)" to refer to a wireless device 110. Appx337, 2:32-33. In contrast, base stations 130 and 132 are only referred to as "base stations" (Appx337, 2:28-31), and the base stations are never identified as "users" or "user equipment."

Moreover, the Board found that extrinsic evidence supports the distinction between user equipment and base stations. Appx49. The Board noted that the 2010 3GPP Technical Specification, which Intel's expert cites, differentiates between user equipment and base stations, listing technical reports titled "User

Equipment (UE) radio transmission and reception" and "Base Station (BS) radio transmission and reception." Appx49 (citing Appx3903). Likewise, Intel's own '254 patent distinguishes between user equipment and base stations, explaining that a "wireless device, such as user equipment (UE)" can communicate with a "transmission station, such as a base station." Appx20950, 16:34-44.

Thus, "user" in the Board's construction does not encompass a base station.

* * *

For the reasons above, this Court should reverse the Board's determination of unpatentability on the Yu-based grounds.

## ARGUMENT IN RESPONSE TO THE CROSS-APPEAL

## STATEMENT OF THE ISSUES IN RESPONSE TO THE CROSS-APPEAL

Does substantial evidence support the Board's finding that Chen does not disclose a "plurality of carrier aggregated transmit signals" given Intel's concession that Chen is directed to base-station implementations and Intel's failure to provide any evidence that skilled artisans would have been motivated to modify Chen to provide a user-device implementation?

## STATEMENT OF THE CASE IN RESPONSE TO CROSS-APPEAL

In addition to the statement of the case in Qualcomm's opening brief, Qualcomm provides the following statement pertinent to Intel's cross-appeal.

### A.    Intel's IPR Petitions

In 2018, Intel filed six IPR petitions challenging the claims of the '675 Patent under 35 U.S.C. § 103.  The two petitions at issue on this cross-appeal (the 1328 and 1330 IPRs) relied on Chen (Appx2851-2853) as the primary reference. In those IPRs, Intel challenged: (1) claims 1-3, 5, 7, 11, 17-21, and 27 in view of Chen and Wang; (2) claims 8-10 and 28-30 in view of Chen, Wang, and Choi; (3) claim 12 in view of Chen, Wang, and Eliezer; and (4) claims 13-15 and 23-25 in view Chen, Wang, and Dahlman (collectively, the "Chen-based grounds"). Appx7554; Appx7604; Appx14121-14122.  Intel's Chen-based grounds did not rely on the Yu, Wimpenny, or Hou references that Intel now asserts in its cross-appeal.  Intel's petitions argued that the broadest reasonable interpretation of the

claim limitation "plurality of carrier aggregated transmit signals" was "signals for transmission on multiple carriers at the same time to increase the bandwidth for a user." Appx7551; Appx14111-14112.

Intel combined Chen with Wang for the "plurality of carrier aggregated transmit signals" limitation. Appx7562-7572; Appx14123-14139. Intel's proposed combination was directed to a base-station implementation. Intel confirmed that its "Petition argues only that a POSA looking to implement and improve Chen would have been motivated to look to Wang and use its disclosure of very basic RF concepts (I/Q signal processing and OFDM modulation)." Appx7813. Intel did not argue in its petitions that skilled artisans would have been motivated to modify Chen's base-station implementation to provide a user-device implementation. Appx7562-7572; Appx14123-14139.

### B.    The Board's Final Written Decisions On This Cross-Appeal

The Board construed the "plurality of carrier aggregated transmit signals" limitation to mean "signals for transmission on multiple carriers at the same time to increase the bandwidth for a user" as Intel's petitions proposed. Appx148-149. Applying that construction, the Board found that none of the Chen-based grounds taught or suggested that limitation. Appx152-160. The Board thus held that Intel failed to carry its burden of proving that any challenged claim was unpatentable in view of the Chen-based grounds. Appx160-161.

The Board found that Intel "does not dispute that Chen is directed to base stations" because Intel acknowledged that "the authors of Chen validated their envelope-tracking structure for transmitting multiple signals with a single amplifier by using a base-station implementation." Appx158. The Board also found that "[a]lthough [Intel] argues that Chen is not limited to base stations, [Intel] points to nothing in the record as support." Appx158. The Board further found that "[e]ven if Chen were not limited to base stations ... [Intel] does not proffer any reason as to why an ordinarily skilled artisan would have considered modifying Chen's base station implementation ... to provide a user device implementation." Appx159. Additionally, the Board found that "[Intel]'s declarant likewise fail[ed] to discuss any potential modification of Chen for implementation in a user device." Appx159. Accordingly, the Board was "not persuaded that Chen teaches or suggests ... 'to increase the bandwidth for a user,'" and held that Intel failed to show that any challenged claim would have been obvious in view of Chen-based grounds. Appx160.

## <u>SUMMARY OF THE ARGUMENT FOR THE CROSS-APPEAL</u>

Substantial evidence fully supports the Board's findings that the challenged claims would not have been obvious in view of the Chen-based grounds. Intel's various arguments do nothing to disturb the Board's findings and analysis.

Intel disputes the Board's factual findings that Chen's disclosure is limited to a base-station implementation and does not disclose a "plurality of carrier aggregated transmit signals." IBr. 73. Yet Intel's argument is undermined by its own concession that Chen relates to a base station-implementation. Appx7819. Moreover, Intel never presented any evidence that skilled artisans would have been motivated to modify Chen to achieve a user-device implementation.

Intel also asserts that it would have been obvious to use Wang's orthogonal frequency division multiplexing ("OFDM") with Chen to provide a user-device implementation. IBr. 73. But Intel explicitly stated that the combination of Chen and Wang was limited to Wang's I/Q signal processing and OFDM modulation, not for converting Chen's base-station implementation into a user-device implementation. Appx7813. The Board correctly found that Intel did "not proffer any reason as to why an ordinarily skilled artisan would have considered modifying Chen's base station implementation of the concurrent dual-band PA to provide a user device implementation of the concurrent dual-band PA." Appx159.

Intel's efforts to fault the Board for purportedly "overlook[ing] Intel's record citations regarding mobile device implementations" are equally unavailing. IBr. 73-74. On appeal, Intel advances arguments and prior-art references that it did not present in its petitions and which did not form the basis for any of the Chen-based grounds. Such untimely arguments are waived. Intel cannot contest whether

substantial evidence supports the Board's findings based on evidence that Intel itself did not present in its petitions.

Finally, Intel's arguments of unpatentability based on the Chen-based grounds in view of Intel's new claim construction fail for the same reason as the Yu-based grounds explained above.

## STANDARD OF REVIEW IN RESPONSE TO THE CROSS-APPEAL

Obviousness is a question of law based on underlying factual determinations. This Court reviews the Board's legal conclusion *de novo* and the fact findings for substantial evidence. *Ariosa Diagnostics*, 805 F.3d at 1364. "[W]hat a piece of prior art teaches presents a question of fact that is reviewed for substantial evidence." *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1359 (Fed. Cir. 2021).

## I.   SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDINGS THAT THE CHALLENGED CLAIMS ARE NOT UNPATENTABLE OVER THE CHEN-BASED GROUNDS

In its Final Written Decisions on Remand in the Chen-based IPRs, the Board found the challenged claims not unpatentable. Appx160-161. Attempting to disturb the Board's factual findings, Intel raises a series of arguments that are contrary to the record evidence, refuted by Intel's own statements, and untimely because they were not raised in Intel's petitions.

### A.    Substantial Evidence Supports The Board's Findings That Chen Is Directed To A Base Station Rather Than A User-Device Implementation

Each challenged claim recites a "plurality of carrier aggregated transmit signals," which the Board construed to mean "signals for transmission on multiple carriers at the same time to increase the bandwidth for a user." Appx148-149. The Board found that the "user" "does not encompass a base station," explaining that the '675 Patent distinguishes between wireless devices (also referred to as *user equipment*) and base stations. Appx157-158.

Challenging the Board's factual findings that Chen is limited to a base-station implementation, Intel asserts that Chen also discloses user-device implementations. IBr. 73. Substantial evidence fully supports the Board's findings that Chen does not teach or suggest a user-device implementation.

<u>First</u>, Intel proffers a series of assertions interpreting the Chen reference coupled with a parroting of the claim language. IBr. 72-73. This Court makes clear that such attorney argument is not evidence and certainly cannot disturb the Board's factual findings based on the record evidence. *Elbit Sys.*, 881 F.3d at 1359. And the Board's "decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Teva*, 8 F.4th at 1359.

Second, there is no dispute that Chen is directed to a base-station implementation.  Appx2851-2853.  Intel acknowledges that "the authors of Chen validated their envelope-tracking structure for transmitting multiple signals with a single amplifier *by using a base-station implementation*."  Appx7819; IBr. 73. Dr. Williams also explained that Chen's "two page disclosure describes a base station multiple-band power amplifier implementation."  Appx3989 ¶73. Dr. Williams provided testimony detailing why skilled artisans "would know that Chen is discussing a base station implementation processing individual signal transmissions originating from a variety of sources (*i.e.*, not carrier aggregation) for a number of reasons."  Appx3991-3994 ¶¶76-78 (explaining reasons).  This evidence amply supports the Board's findings that Chen is limited to a base-station implementation and does not "extend to user equipment."  Appx158-159.

Third, Intel contends that "Chen contains no language that limits itself to base station implementations."  IBr. 73.  Assessing the record evidence, the Board correctly rejected this argument and found that "Chen's silence as to whether its concurrent dual-band PA is limited to base station implementations does not adequately show that Chen's teachings also extend to user equipment."  Appx159. In such instances, "if the fact trier of the issue is left uncertain, the party with the burden loses."  *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1379 (Fed. Cir. 2015).  As the Board further explained, "the burden is not on

[Qualcomm] to show that Chen is limited to base stations; rather, the burden is on [Intel] to show that Chen satisfies the requirement of increased bandwidth for a user." Appx158-159. This adheres to the basic rule that "the burden of persuasion is on the petitioner to prove unpatentability … and that burden never shifts to the patentee." *Google LLC v. IPA Techs. Inc.*, 34 F.4th 1081, 1085 (Fed. Cir. 2022). Here, Intel failed to present any evidence that Chen is applicable to a user device, did not identify any relevant disclosure, and did not proffer any expert testimony.

### B. Intel's Petitions Did Not Provide Any Reason Why Skilled Artisans Would Have Been Motivated To Modify Chen To Provide A User-Device Implementation

Unable to identify any evidence that Chen discloses a user-device implementation, Intel faults the Board for allegedly "overlook[ing] Intel's record citations regarding mobile device implementations." IBr. 73-74. Notably, Intel does not cite anything from the petitions for its proposition that skilled artisans would have been motivated to modify Chen to provide for a user-equipment implementation. Intel cannot do so because it never made such an argument. As the Board found: "Even if Chen were not limited to base stations, however, we note that [Intel] does not proffer any reason as to why an ordinarily skilled artisan would have considered modifying Chen's base station implementation of the concurrent dual-band PA to provide a user device implementation of the concurrent dual-band PA." Appx159. The Board further found that Intel's

"declarant likewise fails to discuss any potential modification of Chen for implementation in a user device."  Appx159.

Intel incorrectly asserts it "explained that it would have been obvious to use orthogonal frequency division multiplexing ('OFDM'), as disclosed in Wang, in Chen's architecture to take advantage of the high data transmission rates that OFDM allows in mobile devices."  IBr. 73 (citing Appx7573-7576).  Intel's argument is wrong for several reasons.

First, the section of the petition to which Intel cites *does not* relate to the disputed limitation requiring "a plurality of carrier aggregated signals."  Rather, Intel's citations address a *different* limitation requiring OFDM or SC-FDMA (Single Carrier Frequency Division Multiple Access) signals.  Appx7573-7577.  These citations concern Intel's argument that Wang discloses OFDM signals.  Nothing in the cited section argues that skilled artisans would have been motivated to modify Chen to provide a user-device implementation.  Appx7573-7577.

Second, in the section of the petition addressing the "plurality of carrier aggregated transmit signals" limitation, Intel contended that skilled artisans would have been motivated to combine Chen with Wang's teaching about I/Q signal processing.  Appx7562-7572.  Importantly, Intel's petitions did not argue or suggest that skilled artisans would have been motivated to modify Chen to provide a user-device implementation.  Appx7562-7572.

<u>Third</u>, Intel's petitions made clear that the proposed Chen/Wang combination related to a base-station implementation. Intel explicitly stated that it was using Wang only for the "very basic RF concepts" of I/Q signal processing and OFDM modulation, rather than modifying Chen for a user-device implementation. Appx7813. In doing so, Intel represented that the "Petition argues only that a POSA looking to implement and improve Chen would have been motivated to look to Wang and use its disclosure of very basic RF concepts (I/Q signal processing and OFDM modulation)." Appx7813. Intel also confirmed that OFDM signals are used in the downlink from the base station, quoting evidence for its petition that "the OFDMA scheme *is adopted for downlink from a base station to a mobile station*." Appx7575.

## C.    Intel's Argument Impermissibly Raises New Theories Never Presented In Its Petitions

Faced with petitions that did not set forth any theory for modifying Chen to provide user-device implementations, Intel resorts to citing additional prior-art references—none of which formed any part of the Chen-based grounds—to make the attorney assertion on appeal that power tracking systems "frequently apply to both uplink and downlink transmission[s]." IBr. 74. To the extent Intel argues that such prior-art references demonstrate that skilled artisans would have been motivated to modify Chen to provide a user-device implementation, that argument is waived because it was not presented in Intel's petitions.

The Supreme Court directs that "Petitioner's contentions … define the scope of the litigation all the way from institution through to conclusion." *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1356-57 (2018).  Here, Intel's petition never argued that skilled artisans would have been motivated to modify Chen to provide a user-device implementation.  Tellingly, Intel does not cite its petitions or expert declarations in raising this argument.  IBr. 74.  Intel points only to the Wimpenny and Hou references—which Intel never cited much less discussed in its petitions— and the Yu reference—which only formed the basis for the Yu-based grounds.  IBr. 74.  The "untimeliness of [Intel's] alternative theory is self-evident.  [Intel] fails to point to a single line of its original Petition articulating this theory." *Colas Sols., Inc. v. Blacklidge Emulsions, Inc.*, 759 F. App'x 986, 990 (Fed. Cir. 2019).

Intel was required to identify "with particularity" the "evidence that supports the grounds for the challenge to each claim."  35 U.S.C. § 312(a)(3).  The "expedited nature of IPRs bring with it *an obligation* for petitioners to make their case in their petition to institute.  While the Board's requirements are strict ones, they are requirements of which petitioners are aware when they seek to institute an IPR." *Intelligent Bio-Sys.*, 821 F.3d at 1369.  Intel first cited the Wimpenny and Hou references in its IPR reply briefs.  Even then, Intel did not argue that skilled artisans would have been motivated to modify Chen to provide a user-device implementation.  Appx7819.  Despite submitting an expert declaration with its IPR

reply briefs, Intel's expert never opined about these references, nor opined that skilled artisans would have been motivated to modify Chen to provide a user-device implementation. Appx3799-3815. Even if Intel had made such an argument in reply, it would have been waived as a new theory not presented in its petitions. *See MModal LLC v. Nuance Commc'ns., Inc.*, 846 F. App'x 900, 906-07 (Fed. Cir. 2021) (affirming determination that a new argument raised in reply was impermissible because it was not sufficiently made in the petition); *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330-31 (Fed. Cir. 2019) (affirming Board's decision to disregard a new obviousness theory first raised in reply).

Intel wrongly faults the Board for "overlook[ing]" references that were not cited in Intel's petitions, did not form the basis for Intel's Chen-based grounds, and were not even cited, much less discussed, by Intel's expert. *See Intelligent Bio-Sys.*, 821 F.3d at 1369-70 (affirming Board's refusal to consider new references cited in petitioner's reply but not included in the petition). Intel's mere citation to the Wimpenny and Hou references does not establish that skilled artisans would have been motivated to modify Chen to provide a user-device implementation. In any event, regardless of whether those references' teachings could be implemented in a user device, they fail to show that skilled artisans would have been motivated to modify Chen's base-station implementation. "[T]here must be a showing of a suggestion or motivation to modify the teachings of that reference to the claimed

invention in order to support the obviousness conclusion." *SIBIA*, 225 F.3d at 1356.

Finally, contrary to Intel's attorney assertions, Qualcomm's identification of Hou in an Information Disclosure Statement does not demonstrate that Qualcomm was "rely[ing] on the interchangeability of uplink and downlink technology." IBr. 74. Intel did not submit any evidence or expert testimony to show that skilled artisans would have been motivated to modify Chen to provide a user-device implementation. Here, "[e]xpert testimony was required not only to explain what the prior-art references disclosed, but also to show that a person skilled in the art would have been motivated to combine them in order to achieve the claimed invention." *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1348 (Fed. Cir. 2013).

\*    \*    \*

Having fully evaluated the evidence, the Board correctly found that: (i) Chen was directed to a base-station implementation, and (ii) Intel did not present any evidence that skilled artisans would have been motivated to modify Chen's base-station implementation for a user-device implementation. Appx149-160.

## II.    THE BOARD CORRECTLY CONSTRUED THE DISPUTED TERMS

Intel's argument that the challenged claims would have been obvious under Intel's newly-proposed construction (IBr. 69) should be rejected for the reasons set forth above in Qualcomm's reply.

-58-

## <u>CONCLUSION</u>

For the reasons discussed above and in Qualcomm's opening brief, the Board's determination that the challenged claims are unpatentable in view of the Yu-based grounds should be reversed, and the Board's determination that the challenged claims are not unpatentable in view of the Chen-based grounds should be affirmed.

Dated:  May 11, 2023

Respectfully submitted,

/s/ I. Sasha Mayergoyz
I. SASHA MAYERGOYZ
MARC S. BLACKMAN
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 269-1572
smayergoyz@jonesday.com

JENNIFER L. SWIZE
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-5417

MATTHEW W. JOHNSON
JOSHUA R. NIGHTINGALE
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 394-7950

ROBERT M. BREETZ
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-7029

*Attorneys for Appellant Qualcomm, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,835 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 pt.

Dated:  May 11, 2023

*/s/ I. Sasha Mayergoyz*
I. SASHA MAYERGOYZ
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 269-1572
smayergoyz@jonesday.com

*Counsel for Qualcomm, Inc.*