Nos. 2022-1824, -1825, -1826, -1828, -1829, -1830

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

QUALCOMM INCORPORATED,

*Appellant*,

*v.*

INTEL CORPORATION,

*Cross-Appellant.*

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2018-01326, IPR2018-01327, IPR2018-01328, IPR2018-01329, IPR2018-01330, IPR2018-01340

## REPLY BRIEF FOR CROSS-APPELLANT INTEL CORPORATION

DAVID L. CAVANAUGH
THOMAS G. SAUNDERS
TODD C. ZUBLER
GARY M. FOX
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC  20037
(202) 663-6000

KATHRYN D. ZALEWSKI
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
(650) 858-6000

LOUIS W. TOMPROS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Cross-Appellant*
*Intel Corporation*

June 30, 2023

# CERTIFICATE OF INTEREST

Counsel for Cross-Appellant Intel Corporation certifies the following:

**1.    Represented Entities**.  Fed. Cir. R. 47.4(a)(1).  Provide the full names of all entities represented by undersigned counsel in this case.

Intel Corporation.

**2.    Real Party in Interest**.  Fed. Cir. R. 47.4(a)(2).  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

There are no other real parties in interest for the represented entity.  Apple Inc. was identified as a real party in interest in the underlying *inter partes* reviews.

**3.    Parent Corporations and Stockholders**.  Fed. Cir. R. 47.4(a)(3).  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.    Legal Representatives**.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

WILMER CUTLER PICKERING HALE AND DORR LLP:  Richard Goldenberg, Theodoros Konstantakopoulos.

**5.    Related Cases**.  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

None.

**6.    Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

None.

Dated:  June 30, 2023

/s/ Louis W. Tompros

LOUIS W. TOMPROS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF AUTHORITIES ................................................................ v

INTRODUCTION ................................................................ 1

ARGUMENT ................................................................ 4

I.    QUALCOMM FAILS TO REBUT INTEL'S ARGUMENTS THAT THE BOARD ERRED IN ITS CONSTRUCTION ON REMAND OF THE "PLURALITY" TERM ................................................................ 4

      A.    Intel Cannot Be Judicially Estopped From Challenging The Board's Construction On Remand Of The "Plurality" Term ................................................................ 4

      B.    Intel Has Shown That The Board's Construction On Remand Of The "Plurality" Term Is Overly Narrow ................................................................ 8

            1.    Definitions in the specification support the Board's original construction ................................................................ 9

            2.    The intrinsic evidence does not support the Board's construction on remand ................................................................ 16

            3.    The extrinsic evidence also does not support the Board's construction on remand ................................................................ 19

            4.    The Board's original construction does not read "aggregated" out of the claims ................................................................ 21

      C.    Qualcomm Ignores That The Board Incorrectly Limited The '675 Claims To Mobile Device Implementations ................................................................ 22

II.   QUALCOMM DOES NOT MEANINGFULLY DISPUTE THAT THE CLAIMS ARE UNPATENTABLE UNDER THE BOARD'S ORIGINAL CONSTRUCTION ................................................................ 25

III.   INTEL HAS SHOWN THAT THE CHALLENGED CLAIMS ARE
       UNPATENTABLE EVEN UNDER THE BOARD'S CONSTRUCTION ON
       REMAND ........................................................................................................26

IV.    QUALCOMM DOES NOT DENY THAT INTEL HAS STANDING TO
       APPEAL ..........................................................................................................31

CONCLUSION .....................................................................................................32

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*,
   473 F.3d 1196 (Fed. Cir. 2007) ............................................................11, 12, 15

*Abbott Laboratories v. Syntron Bioresearch, Inc.*,
   334 F.3d 1343 (Fed. Cir. 2003) ........................................................14

*Anacor Pharmaceuticals, Inc. v. Iancu*,
   889 F.3d 1372 (Fed. Cir. 2018) ........................................................30

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,
   216 F.3d 1042 (Fed. Cir. 2000) ........................................................16

*AstraZeneca AB v. Mutual Pharmaceutical Co.*,
   384 F.3d 1333 (Fed. Cir. 2004) ........................................................11

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006) ........................................................21

*Braintree Laboratories, Inc. v. Novel Laboratories, Inc.*,
   749 F.3d 1349 (Fed. Cir. 2014) ........................................................18

*Cephalon, Inc. v. Abraxis Bioscience, LLC*,
   618 F. App'x 663 (Fed. Cir. 2015) ............................................................13, 14

*Data General Corp. v. Johnson*,
   78 F.3d 1556 (Fed. Cir. 1996) ........................................................5

*Hill-Rom Services, Inc. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014) ............................................................10, 15

*In re Cortright*,
   165 F.3d 1353 (Fed. Cir. 1999) ........................................................20

*In re Killian*,
   45 F.4th 1373 (Fed. Cir. 2022) ........................................................24

*Intel Corp. v. Qualcomm Inc.*,
   21 F.4th 784 (Fed. Cir. 2021) ........................................................ 31-32

*Intel Corp. v. Qualcomm Inc.*,
   21 F.4th 801 (Fed. Cir. 2021) ...............................................................32

*Intel Corp. v. Qualcomm Inc.*,
   Nos. 2020-2092, 2020-2093, 2022 WL 880681 (Fed. Cir. Mar. 24, 2022) .......32

*Intel Corp. v. XMTT, Inc.*,
   No. 2021-2127, 2022 WL 1152312 (Fed. Cir. Apr. 19, 2022)........................6, 7

*Key Pharmaceuticals v. Hercon Laboratories Corp.*,
   161 F.3d 709 (Fed. Cir. 1998) ................................................................8

*KSR International Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007).............................................................................31

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ..............................................................17

*Medicines Co. v. Mylan, Inc.*,
   853 F.3d 1296 (Fed. Cir. 2017) .............................................................12

*Mondis Technology Ltd. v. Chimei InnoLux Corp.*,
   822 F. Supp. 2d 639 (E.D. Tex. 2011)......................................................6

*New Hampshire v. Maine*,
   532 U.S. 742 (2001).........................................................................5, 7

*Renishaw PLC v. Marposs S.p.A.*,
   158 F.3d 1243 (Fed. Cir. 1998) .............................................................11

*SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*,
   225 F.3d 1349 (Fed. Cir. 2000) .............................................................31

*Sinorgchem Co. v. International Trade Commission*,
   511 F.3d 1132 (Fed. Cir. 2007) .............................................................15

*Thorner v. Sony Computer Entertainment America LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) .............................................................10

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ...............................................................11

## OTHER AUTHORITIES

Corrected Opening Brief of Appellant Intel Corporation, *Intel Corp. v. XMTT, Inc.*, No. 2021-2127 (Fed. Cir. Nov. 29, 2021), 2021 WL 5711693.................................................................................................6, 7

# INTRODUCTION

Intel demonstrated in its opening brief that the Board erred when it altered its original construction of "plurality of carrier aggregated transmit signals" from "signals for transmission on multiple carriers" to include an additional limitation: "to increase the bandwidth for a user."  As Intel explained, the Board's original construction is the broadest reasonable interpretation, and it is based on explicit definitions in the '675 specification of the two constituent parts of the "plurality" term: "carrier aggregation" and "transmit signal."  Intel's opening brief also explained that if the Board's original construction is correct, Qualcomm has all but conceded that it should lose these consolidated appeals.  Intel further demonstrated that claims 1-3, 5, 7-15, 17-21, 23-25, and 27-30 of the '675 patent are unpatentable for obviousness over Chen even under the Board's latest construction of the "plurality" term.

Qualcomm attempts to justify the Board's final written decision on remand that Intel has not shown the unpatentability of the challenged claims under the Chen grounds.  Qualcomm's arguments are without merit.

Qualcomm first argues that Intel should be judicially estopped from advocating for the Board's original construction of the "plurality" term because, prior to the first round of appeals to this Court, Intel had proposed a construction containing "to increase the bandwidth for a user."  There can be no judicial

estoppel here: Intel did not succeed in convincing the Board to adopt Intel's initial construction, and Intel was free to argue on remand that the Board's construction in its first set of final written decisions was correct. Intel now argues for the same construction for which it argued on remand, and judicial estoppel is thus inapplicable.

Next, Qualcomm contends that the Board's latest construction of the "plurality" term is correct, but that construction does not align with the explicit definitions of "carrier aggregation" and "transmit signal" that appear in the '675 specification. Qualcomm's focus on the high standard for "lexicography" is a distraction. Intel does not contend that the '675 patent redefines those two terms in ways that differ from their ordinary meanings. And despite Qualcomm's protestations, the Board's original construction does not read "aggregated" out of the claims, because it still requires "multiple" carriers.

Qualcomm fails to address Intel's arguments that the Board's secondary construction of "user" in "for a user" as limiting the claims to mobile device implementations is at odds with both the claims, which never hint at any such limitation, and the specification, which recites the word "user" exactly one time. Neither Qualcomm nor the Board has ever provided a supportable justification for the importation of this limitation into the claims. Instead, Qualcomm argues only that Intel somehow forfeited that argument, which is demonstrably untrue.

Qualcomm also misconstrues the intrinsic and extrinsic evidence. The 3GPP technical report, the Chen publication, and the amendment during prosecution do not support Qualcomm's preferred claim construction or justify the Board's improper importation of the objective of carrier aggregation into the claims. Qualcomm also does not grapple with the substance of Intel's expert testimony. As Intel's expert explained, carrier aggregation often does—but need not ***always***—result in increased bandwidth. Both Han and the 2013 Qualcomm paper recite the objective of carrier aggregation without contradicting Intel's expert.

Even if this Court adopts the Board's latest construction of the "plurality" term, the Board's final written decision on remand should not stand. As Intel's expert testified, Chen discloses signals for transmission on multiple carriers at the same time to increase the bandwidth for a user. Although Chen was validated using a base station implementation, nothing in Chen limits its architecture to base stations. And related prior art references demonstrate the interchangeability between both types of implementations, the substance of which Qualcomm does not challenge. Under a properly flexible obviousness analysis, Intel has proven that the '675 claims are unpatentable over Chen.

## ARGUMENT

I.   **QUALCOMM FAILS TO REBUT INTEL'S ARGUMENTS THAT THE BOARD ERRED IN ITS CONSTRUCTION ON REMAND OF THE "PLURALITY" TERM**

Intel demonstrated that the Board's construction on remand of the "plurality" term is erroneous and that the Board's original construction is the proper construction.[1]   In response, Qualcomm argues that Intel should be judicially estopped from challenging the Board's construction on remand, and that the Board's construction on remand is correct.   Qualcomm is wrong, both procedurally and on the merits.[2]

### A.   Intel Cannot Be Judicially Estopped From Challenging The Board's Construction On Remand Of The "Plurality" Term

In its argument that Intel is "estopped from challenging the Board's construction" on remand of the "plurality" term, Qualcomm omits both the applicable law and the relevant facts.   *See* QRespBr. 28-29.

As explained to the Board in its opening brief on remand, Intel initially proposed construing the "plurality" term to mean "signals for transmission on

---

[1] Like Qualcomm, Intel cites the parties' opening briefs as "QBr." and "IBr." Intel cites Qualcomm's response and reply brief as "QRespBr."

[2] Qualcomm's arguments about claim construction appear initially in the section of its response brief regarding the Yu grounds, *see* QRespBr. 26-45, but they are expressly reasserted in response to Intel's conditional appeals on the Chen grounds, *see* QRespBr. 58 (incorporating "reasons set forth above in Qualcomm's reply").   Thus, claim construction properly falls within the scope of this reply brief.

multiple carriers at the same time to increase the bandwidth for a user" to limit disputes because the administrative law judge ("ALJ") in the ITC investigation had already adopted this construction at Qualcomm's urging.  Appx20072.  The Board rejected that construction in favor of a broader construction (with no objection from Intel), and on remand, Intel argued for the Board's broader construction. Although Intel changed its position, judicial estoppel requires that the estopped party have "***succeeded*** in persuading a court to accept that party's earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *see also Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996) ("The doctrine of judicial estoppel is that where a party ***successfully*** urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed.").[3]

Here, Intel did not succeed in persuading the Board to adopt Intel's initial construction of the "plurality" term or its construction on remand.  After the parties first proposed constructions of the "plurality" term, the Board adopted a third construction that neither party proposed.  Appx385-390.  It does not matter that the Board ultimately adopted Intel's initial claim construction—on remand, Intel modified its position, as it was free to do after its initial construction was rejected.

---

[3] All emphasis added, except where otherwise noted.

Judicial estoppel applies only if ***Intel*** successfully convinced the Board to adopt Intel's position. *See Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 643 (E.D. Tex. 2011) (holding that defendant was not "judicially estopped because the Court never accepted [defendant]'s position prior to it changing its position"). That did not happen in either the first set of final written decisions or the final written decision on remand.

Moreover, after this Court vacated the Board's first set of final written decisions, the Board issued an order that allowed both parties to brief the issue of "whether the Board properly construed the claim term 'plurality of carrier aggregated transmit signals' to mean 'signals for transmission on multiple carriers.'" Appx20020. Neither the Board's order nor this Court's instructions on remand limited the arguments that could be made on remand.

Qualcomm's judicial estoppel argument rests primarily on this Court's nonprecedential decision in *Intel Corp. v. XMTT, Inc.*, No. 2021-2127, 2022 WL 1152312 (Fed. Cir. Apr. 19, 2022). That case is inapposite. In *XMTT*, the parties disputed the meaning of a claim term in the *inter partes* review ("IPR") proceedings. *See* Corrected Opening Brief of Appellant Intel Corporation at 23, *Intel Corp. v. XMTT, Inc.*, No. 2021-2127 (Fed. Cir. Nov. 29, 2021), 2021 WL 5711693. At the oral hearing, the Board proposed a construction that neither party had advanced, which the parties addressed in supplemental briefing. *Id.* at 24-25.

In its supplemental brief, Intel agreed with the Board's proposed construction. *See id.* at 25. The Board then adopted a version of that construction in the final written decision but also held that no claim was unpatentable. *See id.* at 27-32. On appeal, Intel argued that the Board erred by adding a new, unsupported limitation to the construction. *See id.* at 32-33. This Court disagreed, concluding that "[t]he Board adopted the claim construction for which Intel advocated," and Intel was therefore "judicially estopped from raising its claim construction argument." *XMTT*, 2022 WL 1152312, at *1. Thus, the Court determined that the Board had accepted Intel's position from its supplemental brief, and that Intel's position on appeal was "clearly inconsistent" with that position. *Id.*

The facts here are materially different from the facts in *XMTT*. In this case, the Board did not originally accept the construction in Intel's IPR petition, and Intel was thus not bound by that position on remand. Intel's position in this round of appeals is not "clearly inconsistent" with the position that Intel took on remand. *See XMTT*, 2022 WL 1152312, at *1. Rather, Intel is urging this Court to adopt the same construction of the "plurality" term for which Intel advocated on remand. For these reasons, there can be no judicial estoppel. *See New Hampshire*, 532 U.S. at 750 ("[A] party's later position must be 'clearly inconsistent' with its earlier position.").

Qualcomm's invocation of *Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709 (Fed. Cir. 1998), fails for similar reasons. In that case, this Court was concerned that "a party could advocate [for] a certain claim construction at trial" but then get an unfavorable ruling on validity or infringement and thereafter "assert a new claim construction" to get a second chance in the litigation. *Id.* at 715. Qualcomm contends that this is "precisely what Intel does" in this case. QRespBr. 29. Not so. Intel modified its claim construction position ***before*** the Board issued its final written decisions on remand. Intel has not engaged in any kind of "mischief" that might create "inefficiency" warranting judicial estoppel. *See id.*

## B.    Intel Has Shown That The Board's Construction On Remand Of The "Plurality" Term Is Overly Narrow

On remand, the Board erred in construing the "plurality" term to mean "signals for transmission on multiple carriers at the same time to increase the bandwidth for a user." As the Board originally determined, the broadest reasonable interpretation of the "plurality" term is the first half of that construction: "signals for transmission on multiple carriers." Qualcomm's arguments to the contrary are meritless.

### 1. Definitions in the specification support the Board's original construction

As Intel explained in its opening brief, according to the '675 specification, "carrier aggregation … is operation on multiple carriers." Appx337(2:63-64). The '675 patent consistently uses the term "carrier aggregation" according to that definition. *See, e.g.*, Appx337-338(2:64-65, 3:2-5). The specification also states that a "transmit signal is a signal comprising a transmission on one or more carriers, a transmission on one or more frequency channels, etc." Appx338(3:60-62). Again, the '675 patent routinely uses the term "transmit signal" in accordance with that definition. *E.g.*, Appx337-338(1:38-40, 2:14-17, 4:57-65). When the two definitions for "carrier aggregation" and "transmit signals" are combined, "carrier aggregated transmit signals" means "signals for transmission on multiple carriers." *See* Appx30.[4] These statements are clear, unequivocal, and dispositive.

In response, Qualcomm asserts a laundry list of arguments as to why these clear statements supposedly do not apply. Each one fails.

***First***, Qualcomm mischaracterizes a statement about lexicography made by Intel's counsel. *See* QRespBr. 30. During the hearing before the Board, Intel's counsel noted that "we're not dealing with any kind of lexicography or disavowal here." Appx1648. That statement was about ***Qualcomm's*** arguments—

---

[4] Qualcomm does not dispute "that 'plurality of' simply means 'multiple' or 'more than one,' as is customary in patent drafting." IBr. 47 n.12.

specifically, that ***Qualcomm*** had not argued for lexicography or disavowal in support of its artificially narrow construction of the "plurality" term. *See* Appx1648 ("And I don't think you'll hear from the Patent Owner, and we haven't seen any argument, that there's lexicography or disavowal that justifies their narrowing of the construction."); Appx20187. Intel has consistently maintained that the '675 specification provides explicit definitions for "carrier aggregation" and "transmit signal," and that the specification describes carrier aggregation broadly. *See* Appx20034; Appx20186-20187.

Qualcomm tries to hold Intel to the high standard for deviating from the ordinary meaning of a term using lexicography, but Intel's position does not involve such a deviation. For example, Qualcomm states that "Intel fails to address, much less satisfy, the 'exacting' lexicography standard requiring that 'a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning and must clearly express an intent to redefine the term.'" QRespBr. 30 (quoting *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014)). That is the standard that this Court articulated in *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365-1366 (Fed. Cir. 2012), for redefining a term to mean something ***different*** from its ordinary meaning. But Intel does not argue any such deviation. A definition in the specification may confirm the ordinary meaning of the relevant term rather than

redefine it. *See, e.g., Renishaw PLC v. Marposs S.p.A.*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("The intrinsic evidence … can shed light on the meaning of the terms recited in a claim, either by confirming the ordinary meaning of the claim terms or by providing special meaning for claim terms." (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996))). That is the case here: the definitions in the '675 patent confirm the ordinary meanings of "carrier aggregation" and "transmit signal," and that Intel's construction of the "plurality" term is the broadest reasonable interpretation in light of the specification. Notably, Qualcomm never offers any argument for how these definitions are inconsistent with the terms' ordinary meanings.

**Second**, Qualcomm contravenes relevant case law when it argues that the '675 patent does not define "carrier aggregation" or "transmit signal" because it does not put those terms in quotation marks and does not use the phrase "is used herein to mean" before the definition for each term. QRespBr. 31-32. This Court has held that explicit definitional formats are not required. *See, e.g., AstraZeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) (rejecting "suggest[ion] that lexicography requires a statement in the form 'I define _____ to mean _____,'" because "such rigid formalism is not required").

Qualcomm's reliance on *Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007), ignores that the facts in that case were

significantly different from those presented here.  Although the Court in *Andrx* determined that "is" did not signal lexicography, the purported definition of the term "pharmaceutically acceptable polymer" was a list of potential compounds that "neither party's expert declared [was] purely definitional," and the Court determined that the list was not limiting.  *Id.* at 1210-1211.  Here, the '675 specification explains what carrier aggregation *is*; it does not merely provide a list of options for carrier aggregation, and Dr. Choi testified that the passage in the '675 specification is definitional.  *See* Appx337(2:63-64); Appx20843-20844.  As Intel explained before the Board, *see* Appx20188, in *Andrx* the purported definition also conflicted with another excerpt from the patent specification, *see* 473 F.3d at 1211.  There is no similar internal inconsistency for the '675 patent.  *See infra* pp. 13-14.

Qualcomm also relies on *Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1306 (Fed. Cir. 2017).  In that case, although the patent's statement about the term "efficient mixing" did not follow the definitional format used elsewhere in the specification, the "[m]ore important[]" problem was that the proposed construction "amount[ed] to a mere recitation of the results obtained from 'efficient mixing' rather than a definition of what the efficient mixing process *is*."  *Id.* (emphasis in original).  Here, the Board's original claim construction provided a definition of what carrier aggregation *is* and did not merely recite the results of carrier

- 12 -

aggregation.  Indeed, importing an objective or potential result or benefit of carrier aggregation into the claims would be improper.  *See infra* pp. 18-19.

**Third**, Qualcomm incorrectly contends that the statements in the '675 patent are not definitions because they "are at variance with each other."  QRespBr. 32.  Qualcomm has not identified any meaningful conflict between the two definitions.  According to Qualcomm, the definition of "carrier aggregation" involves multiple carriers, yet the definition of "transmit signal" encompasses transmission on only one carrier.  But Qualcomm fails to acknowledge that the definition of "transmit signal" is "a signal comprising a transmission on one **or more** carriers, a transmission on one or more frequency channels, etc."  Appx338(3:60-62).  Moreover, the specification refers to the transmission of multiple transmit signals on multiple carriers.  *E.g.*, Appx337(1:38-40) ("The multiple transmit signals may comprise transmissions sent simultaneously on multiple carriers at different frequencies.").  In short, **both** definitions contemplate multiple carriers, as does the specification.

Qualcomm's other cases are not to the contrary.  In *Cephalon, Inc. v. Abraxis Bioscience, LLC*, 618 F. App'x 663, 667 (Fed. Cir. 2015), this Court rejected a supposed definition of "microparticle" because it was really a claim limitation dictating the size of the claimed microparticle.  The Court pointed out that, under the same logic, another claim with a different particle-size limitation

- 13 -

could also be considered to have a conflicting definition. *See id.* Such a concern is absent here: the only definitions of "carrier aggregation" and "transmit signal" come from the specification, not the claims. *Abbott Laboratories v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355 (Fed. Cir. 2003), similarly involved two inconsistent definitions for the same claim term in one paragraph of the specification.

**Fourth**, Qualcomm wrongly asserts that there can be no construction "based on stitching together separate sentences in a patent." QRespBr. 33. Qualcomm's assertion again rests on the *Thorner* standard for redefining a claim term to have a meaning different from its ordinary meaning. As explained above, the *Thorner* standard is irrelevant here because Intel is not attempting to depart from the ordinary meanings of the terms. *See supra* pp. 10-11. And although Qualcomm criticizes Intel for citing "no authority" for reading two definitions in the specification in conjunction with each other, *see id.*, Qualcomm cites no authority suggesting that explicit definitions of the two constituent parts of the disputed term should be ignored. Qualcomm's argument would make no sense if the parties had separately litigated the meanings of "carrier aggregated" and "transmit signals," and it therefore cannot be correct.

**Finally**, Qualcomm concedes that "is" may signify definition, *see* QRespBr. 33-34, but attempts to distinguish *Sinorgchem* by noting that the defined term in

that case was set off by quotation marks, which are "often a strong indication that what follows is a definition," *see Sinorgchem Co. v. ITC*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) (quoting *Andrx*, 473 F.3d at 1210). But Qualcomm's position is based on the logical fallacy that the inverse is true. *Sinorgchem* never says that a ***lack*** of quotation marks means there is no definition. The '675 specification is clear that it is defining "carrier aggregation" and "transmit signal" by stating what those terms mean.

Qualcomm argues that the definitions do not "use 'words of manifest exclusion or restriction' that could justify deviating from the ordinary meaning." QRespBr. 34 (quoting *Hill-Rom*, 755 F.3d at 1372). But again, Intel's construction does not deviate from the ordinary meaning. If the statements in the '675 specification are not definitions, Qualcomm offers no explanation as to what those statements are supposed to mean.[5]

---

[5] Before the Board, Qualcomm argued that the '675 specification's definition of "carrier aggregation" was merely a "generalized introduction to carrier aggregation." Appx20159. Qualcomm has abandoned this argument on appeal by failing to press it.

### 2. The intrinsic evidence does not support the Board's construction on remand

Qualcomm continues to wrongly rely on statements in the 3GPP technical report and the Chen publication[6] that are buried in those documents but do not themselves appear in the '675 specification. QRespBr. 35-37.

According to Qualcomm, the 3GPP technical report is "highly probative" because the '675 patent "specifically invokes" the report "when discussing carrier aggregation." QRespBr. 35 (citing Appx337(2:58-67)). The '675 patent does not place nearly as much weight on the 3GPP technical report as Qualcomm suggests. The cited portion of the specification briefly refers to the 3GPP technical report in explaining how bands may include carriers according to certain standards. *See* Appx337(2:60-62) ("LTE Release 11 supports 35 bands, which are referred to as LTE/UMTS bands and are listed in 3GPP TS 36.101."). The specification does not mention the report's definition of "carrier aggregation," nor does it even rely on the report's general understanding of carrier aggregation. There is thus no indication that Qualcomm "intended to adopt" the report's definition of "carrier aggregation" for the '675 patent. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1045 (Fed. Cir. 2000).

---

[6] As a reminder, the Chen publication is different from the primary prior art reference in the Chen IPRs. IBr. 56 & n.18.

Qualcomm also misinterprets the definition of "carrier aggregation" in the 3GPP technical report, which is "[a]ggregation of two or more component carriers *in order to support* wider transmission bandwidths." Appx20882. According to that definition, "carrier aggregation *may* (and often does) support wider transmission bandwidths," but it does not necessarily do so. IBr. 55 (emphasis in original). Qualcomm makes much of the fact that "nothing in the definition uses the conditional 'may.'" QRespBr. 36. But like "may," the phrase "in order to support" is permissive and does not establish a requirement for wider transmission bandwidths. Qualcomm also incorrectly contends that Intel "does not dispute" that the 3GPP technical report "provides the term's ordinary meaning." QRespBr. 35. Intel does dispute—as it did before the Board—that carrier aggregation always requires increased bandwidth. *See* Appx20037-20038; Appx20191.

Qualcomm cites various embodiments in the '675 specification as purportedly favoring its interpretation of the definition in the 3GPP technical report. QRespBr. 36. It is well-established, however, that importing features of embodiments into the claims is improper. *See, e.g.*, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). Embodiments in the '675 patent therefore do not establish a limitation for increased bandwidth that should be read into the '675 claims.

Next, Qualcomm relies on the Chen publication's supposed description of carrier aggregation. *See* QRespBr. 36-37. But even if the increased bandwidth in the Chen publication is the result of carrier aggregation, that does not mean that carrier aggregation always results in increased bandwidth. Moreover, contrary to Qualcomm's assertion, Intel did not argue that an examiner or applicant must "specifically discuss cited prior art during prosecution … for the art to be considered in a claim-construction analysis." QRespBr. 37. Intel made only the uncontroversial point that even if the Chen publication can be considered here, the passage from the Chen publication relied on by Qualcomm cannot be too important because the examiner never cited that passage. *See* IBr. 56.

Finally, Intel previously explained how "the Board improperly imported an objective or potential result or benefit of carrier aggregation into the claims," IBr. 56-57, relying on *Braintree Laboratories, Inc. v. Novel Laboratories, Inc.*, 749 F.3d 1349, 1353 (Fed. Cir. 2014), which cautioned against importing objectives or potential benefits or results into claims. Although Qualcomm cites *Braintree*, it does not engage with Intel's arguments, instead simply falling back on its other arguments about the intrinsic and extrinsic evidence. *See* QRespBr. 37-38.

Qualcomm cannot explain why *Braintree* does not control the claim construction issue in this case.[7]

### 3. The extrinsic evidence also does not support the Board's construction on remand

Intel's expert, Dr. Choi, was crystal clear that carrier aggregation ***may*** increase bandwidth but ***does not always*** need to do so. Appx20849 ("While carrier aggregation can increase the bandwidth, it need not do so."); Appx20850 (similar); Appx20854 ("Increased bandwidth is not a defining characteristic of carrier aggregation."); Appx2364 ("Carrier aggregation can achieve higher data rates[.]"). Dr. Choi's testimony also confirmed that increasing bandwidth is only an "objective" or "benefit"—not a characteristic—of carrier aggregation. Appx20849. Qualcomm's expert, Dr. Williams, agreed that increasing bandwidth is the "objective" of carrier aggregation. *See* Appx21183.

Qualcomm argues that Dr. Choi's testimony providing examples of carrier aggregation's effect on bandwidth is a "misguided" comparison. QRespBr. 40. But Qualcomm does not explain how Dr. Choi's comparison is supposedly "misguided." Nor does Qualcomm dispute that Dr. Choi has, in fact, identified and

---

[7] Qualcomm criticizes Intel for "rais[ing] several irrelevant claim-construction arguments." QRespBr. 38 n.3. Intel mentioned these issues only to inform the Court of the full context for the parties' claim construction positions. That context illustrates that Qualcomm's positions have been unreasonable.

explained a situation in which carrier aggregation does ***not*** result in increased bandwidth. *See* Appx20852-20853.

Qualcomm also distorts U.S. Patent No. 9,161,254 ("Han") to argue that it contradicts Dr. Choi's testimony. QRespBr. 39. That is wrong. According to Han, "[o]ne technique for providing additional bandwidth capacity to wireless devices is through the use of carrier aggregation of multiple smaller bandwidths to form a virtual wideband channel at a wireless device." Appx20944(3:19-22); *see also* Appx20944(3:49-51) ("Carrier aggregation provides a broader choice to the wireless devices, enabling more bandwidth to be obtained."). Han merely reiterates the objective of carrier aggregation; it does not state that carrier aggregation always increases bandwidth. The same is true for the 2013 Qualcomm paper, which also reiterates the objective of carrier aggregation "to provide a bigger data pipe to the user." Appx20924. Although Qualcomm asserts that "'the PTO's interpretation of claim terms should not be so broad that it conflicts with the meaning given to identical terms in other patents from analogous art,'" QRespBr. 39-40 (quoting *In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir. 1999)), it has not explained how there is any conflict between the Board's original construction and the descriptions of "carrier aggregation" in Han and the 2013 Qualcomm paper.

### 4. The Board's original construction does not read "aggregated" out of the claims

Qualcomm argues that the Board's original construction of the "plurality" term is not correct because it reads "aggregated" out of the phrase "carrier aggregated transmit signals." QRespBr. 41-43. Qualcomm simply ignores that the Board's original construction is directly based on the definition of "carrier aggregation" in the '675 specification, which requires multiple carriers. *See* Appx337(2:63-64) ("carrier aggregation … is operation on multiple carriers"). Aggregation is thus specifically incorporated as part of the construction, not read out of the claims. *See* IBr. 53. The Board's original construction gives meaning to "aggregated" by requiring multiple carriers, and no claim language is rendered "meaningless." *See* QRespBr. 42 (quoting *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006)).

Qualcomm states that "Intel ignores … claim amendments" that added "carrier aggregated" to the claims during prosecution. QRespBr. 42. That is not correct. Rather, Intel noted that "neither the Board nor Qualcomm ever explained the reasons for this amendment." IBr. 53. That is unsurprising because the record does not reflect any such reasons. During prosecution, the applicant amended the claims to change "different" before "transmit signals" to "carrier aggregated" with *no* explanation of any kind. *See* Appx2062; Appx2110. This amendment replaced only the word "different." The claims never recited "transmission on multiple

carriers," nor was there any suggestion that "carrier aggregated" meant something other than the definition contained in the specification.  In short, there is no basis for the Board's conclusion that the amendment "indicates that the claims require something more than just signals for transmission on multiple carriers," which is the express definition in the specification.  *See* Appx142.  In fact, a reasonable conclusion is that the applicant merely meant to clarify that the patent is directed to carrier aggregation, as Qualcomm itself acknowledges.  *See* QBr. 6 ("The '675 Patent resolved these issues by implementing carrier aggregation[.]").  Qualcomm has not shown otherwise.

As Intel explained, the Board effectively conceded that "neither the Examiner nor the applicant explicitly expressed an understanding that carrier aggregation requires increasing bandwidth."  IBr. 54-55 (quoting Appx35).  Qualcomm contends that the Board rejected that argument.  QRespBr. 43.  That is not right:  the Board simply stated that this fact does not change what is purportedly in the intrinsic evidence.  *See* Appx35.  Qualcomm's citation to the 3GPP technical report is unavailing for the reasons discussed above.

### C.    Qualcomm Ignores That The Board Incorrectly Limited The '675 Claims To Mobile Device Implementations

As explained above, the Board's inclusion of the phrase "to increase the bandwidth for a user" in its construction of the "plurality" term has no basis in the intrinsic or extrinsic evidence.  To make matters worse, the Board further

construed the word "user" in its own construction as "not encompass[ing] a base station" ("downlink") and effectively limited the claims to mobile device (*i.e.*, "uplink") implementations.  Appx157; *see also* Appx158 ("[T]he third part of our construction, 'to increase the bandwidth for a user,' does not encompass increasing the bandwidth for a base station.").  This erroneous secondary construction made the Yu obviousness analysis more complex than necessary, *see* Appx211-215, and the Board actually *rejected* Intel's obviousness arguments for Chen based *solely* on the Board's erroneous understanding of "user" as referring only to uplink implementations, *see* Appx158-159.

Limiting the claims to mobile device implementations is wrong for multiple reasons.  *See* IBr. 28-29.  The Board's approach ignores the broadest reasonable interpretation of the claims, which make no distinction whatsoever between mobile device and base station implementations.  "Mobile device," "base station," "user," and "user equipment" never appear in a single claim, and even Qualcomm has admitted that the '675 patent is "agnostic" between uplink and downlink implementations.  Appx14370 ("the patent is really agnostic as to that"); *see also* Appx155 (Board acknowledging Qualcomm's statement that "carrier aggregation … can be used in both the uplink and downlink").  The intrinsic evidence that the Board relied on—the specification's description of "wireless device 110" as "user equipment" in a single figure—is the *only* time the term "user" ever appears in the

entire patent and is far from sufficient to justify importing a mobile device limitation into claims that simply do not speak to the type of device in which the alleged invention is implemented.  In short, the Board wrongly allowed the "user" language in the claim construction to take on a life of its own, entirely at odds with the underlying disclosure of the patent.

Tellingly, Qualcomm's brief has no substantive response to these fundamental problems with the Board's secondary construction of "user" and with Intel's arguments based on that construction.  Instead, Qualcomm argues only that Intel forfeited the "user" argument by failing to present "any developed reasoning or explanation."  QRespBr. 44.  This argument is belied by Intel's opening brief, which contains a discussion of the "user" issue spanning two pages and which cited the Board's extensive discussion of this argument in its remand decision. IBr. 28-29.  Intel not only raised the issue in its discussion of the Yu grounds, *id*. at 28-29, but also cross-referenced the same arguments for the Chen grounds, *id*. at 73 & n.23.  That is significantly more than a "conclusory, skeletal argument" of the type that this Court has found to be forfeited.  *See In re Killian*, 45 F.4th 1373, 1385-1386 (Fed. Cir. 2022) (finding appellant's argument forfeited because it was only "obliquely" referred to in ***one sentence*** of appellant's opening brief).  There is no basis for the Court to ignore Intel's argument, and as shown by Qualcomm's

brief, there is no reasonable rebuttal to this argument, which further supports the

Board's original construction omitting the "for a user" language.

## II.    QUALCOMM DOES NOT MEANINGFULLY DISPUTE THAT THE CLAIMS ARE UNPATENTABLE UNDER THE BOARD'S ORIGINAL CONSTRUCTION

If the "plurality" term is construed to mean "signals for transmission on

multiple carriers," as the Board initially determined, then the Board's final written

decision on remand for the Chen grounds cannot stand.  Qualcomm has not argued

that the '675 claims are patentable under Intel's construction and "has all but

conceded that it should lose" under that construction.  IBr. 71; *see also* QRespBr.

50-58.  This is the approach that Qualcomm took on remand, when Qualcomm

failed to distinguish the prior art under the Board's original construction of the

"plurality" term, despite being instructed by the Board to do so.  *See* Appx20170-

20172.  Thus, under Intel's construction, there is no dispute that the Board's final

written decision on remand should be reversed.

Qualcomm's failure to apply Intel's construction makes sense given the

evidence in the record.  In the first set of final written decisions, the Board

concluded that Chen combined with Wang discloses "signals for transmission on

multiple carriers," which is the broadest reasonable interpretation of the "plurality"

term.  Appx573.  In particular, Chen's Input 1 and Input 2 constitute carrier

aggregated transmit signals, as claimed in the '675 patent.  *See* Appx548 (citing

Appx7563).  Chen states that Input 1 and Input 2 are "[t]wo single carrier

wideband code division multiple access signals" operating at different frequencies. Appx2852. Dr. Choi explained that this disclosure means that Input 1 and Input 2 are from different carriers, so Chen necessarily discloses multiple carriers. Appx2395-2396. The Board credited Intel's argument and Dr. Choi's testimony as persuasive. Appx552; *see also* Appx573. In the first set of final written decisions, the Board also properly rejected Qualcomm's argument that Chen and Wang do not disclose carrier aggregated transmit signals because that argument was based on the faulty claim construction for which Qualcomm advocates here. *See* Appx572-573.

Thus, in the first set of final written decisions, the Board rightly concluded that claims 1-3, 5, 7, 11, 17-21, and 27 of the '675 patent are unpatentable for obviousness over Chen and Wang. Appx580. Likewise, the Board rightly concluded that claims 8-10, 12, 13-15, 23-25, and 28-30 of the '675 patent are unpatentable for obviousness over Chen and Wang in combination with other prior art references. Appx592; Appx762. The Board's contrary conclusion in the final written decision on remand should be reversed.

## III. INTEL HAS SHOWN THAT THE CHALLENGED CLAIMS ARE UNPATENTABLE EVEN UNDER THE BOARD'S CONSTRUCTION ON REMAND

Even if the "plurality" term is construed as "signals for transmission on multiple carriers at the same time to increase the bandwidth for a user," the Board still erred in concluding that the '675 claims are not unpatentable. Chen discloses

a "plurality of carrier aggregated transmit signals" as construed by the Board on remand.

As Intel and its expert explained, *see* IBr. 72-73, Chen's Input 1 and Input 2 are signals for transmission on multiple carriers, Appx15413.[8]  Chen teaches a dual-band architecture with signals of different frequencies that are aggregated for transmission.  Appx2851.  Chen also describes a validation prototype using "[t]wo single carrier wideband code division multiple access signals" at different frequencies, indicating that they are from different carriers.  Appx2852.  The method of aggregating signals described in Chen increases the bandwidth for a user.  Appx15413.  Qualcomm disparages this reading of Chen as "attorney argument."  QRespBr. 51.  But Qualcomm ignores that Dr. Choi's expert testimony and the language quoted from Chen itself directly support Intel's position.  Qualcomm does not identify any errors in Dr. Choi's discussion of Chen.

The Board ruled against Intel by determining that Chen is limited to base stations.  Appx158.[9]  Qualcomm asserts that "there is no dispute that Chen is

---

[8] Intel's opening brief accidentally cited the version of Dr. Choi's declaration for the Yu grounds instead of Dr. Choi's declaration for the Chen grounds.  The citations to Appx2395-2396 and Appx2397 should be citations to Appx15413.

[9] As explained above, the Board improperly transformed the "for a user" language in its construction into a mobile device limitation that does not appear anywhere in the claims.  *See supra* Section I.C.

directed to a base-station implementation." QRespBr. 52. That is incorrect—and very much disputed. Intel previously acknowledged that the apparatus described in Chen was *validated* using a base station implementation. IBr. 73. As Intel also pointed out, however, Chen does not contain any language limiting that apparatus to base station implementations. *See generally* Appx2851-2853. In other words, Chen is not *limited to* base station implementations, and neither Qualcomm nor the Board cites any disclosure in the description of the apparatus in Chen indicating that it is so limited.

Qualcomm argues that Intel has not met its burden to show that Chen may be implemented in a mobile device. QRespBr. 52-53. Like the Board, Qualcomm glosses over evidence in the record demonstrating that base station implementations translate into mobile device implementations. For example, Intel explained that it would have been obvious to use Wang's orthogonal frequency division multiplexing ("OFDM") in Chen's architecture to take advantage of the high data transmission rates enabled by OFDM. IBr. 73 (citing Appx7573-7576). Qualcomm complains that the discussion of OFDM appears in the wrong section of Intel's IPR petition because it does not relate to the disputed "plurality" term. QRespBr. 54. This is demonstrably false: the petition discusses OFDM for the claim limitation "wherein the *plurality of carrier aggregated transmit signals* comprise Orthogonal Frequency Division Multiplexing (OFDM) or Single Carrier

Frequency Division Multiple Access (SC-FDMA) signals," as the section heading makes clear.  Appx7573.

Qualcomm asserts that "Intel's petitions did not argue or suggest that skilled artisans would have been motivated to modify Chen to provide a user-device implementation," but that misrepresents the record in this case.  QRespBr. 54.  It is unsurprising that Intel made no argument about mobile device implementations in the petitions:  at the time when the petitions were filed, Intel could not have anticipated that the Board would determine or that Qualcomm would now argue that the claims require a mobile device implementation.  In fact, at the time, Qualcomm had already told the ALJ in the ITC investigation that "carrier aggregation …  can be used in both uplink and downlink," and the '675 patent is "agnostic" in this regard.  Appx14370.  Qualcomm first argued that the claims were limited to a mobile device implementation in its patent owner response when it advanced its now-abandoned "user *transmission*" construction.  *See* Appx7750; Appx7780.  Finally, Intel did explain in its reply why the combination of Chen and Wang still renders the claims unpatentable if the user is a mobile device, citing evidence of the knowledge of a skilled artisan contained in the prosecution history, including Qualcomm's own submissions.  *See* Appx7819.

Qualcomm also contends that Intel "made clear" before the Board "that the proposed Chen/Wang combination related to a base-station implementation."

QRespBr. 55 (citing Appx7813). That is simply not true, and the cited page from Intel's IPR reply makes no such argument. *See* Appx7813. In fact, Intel argued—as the Board itself recognized on remand—that Chen is not limited to base station implementations. *See* Appx159; Appx7819. Intel also explained that architectures involving power tracking for wireless communications "frequently apply to both uplink and downlink transmission." IBr. 74 (quoting Appx7819). Yu and Wimpenny both indicate that their power tracking systems can be employed in both base stations and mobile devices. Appx2472; Appx10293.

Qualcomm also argues that Intel forfeited its reliance on Winpenny, Yu, and Hou because they were not addressed in Intel's petitions. QRespBr. 55. As discussed above, Intel had no reason to rely on these references in its petitions but later did so to show the knowledge of a skilled artisan, not as a part of any grounds for unpatentability. Appx7819. Such use is perfectly appropriate, and Qualcomm had an opportunity to respond to those references. *See Anacor Pharms., Inc. v. Iancu*, 889 F.3d 1372, 1381 (Fed. Cir. 2018) (it was not improper for the Board to rely on references cited in petitioner's reply "as evidence of the knowledge that a skilled artisan would bring to bear in reading" other prior art references). Moreover, Qualcomm itself relied on this interchangeability between uplink and downlink technology during prosecution of the '675 patent when it cited the Hou reference. Appx1877 (citing Appx10417). It would not be fair to permit

Qualcomm to benefit from the interchangeability between uplink and downlink technology but to prevent Intel from doing the same thing here. That interchangeability supports reading Chen as encompassing mobile device implementations.

Lastly, Qualcomm incorrectly argues that "[t]here ***must*** be a showing of a suggestion or motivation to modify the teachings of that reference to the claimed invention in order to support the obviousness conclusion." QRespBr. 57-58 (quoting the pre-*KSR* case *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000)). After the Supreme Court's decision in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), Qualcomm's cited passage from *SIBIA* is no longer good law. Under an appropriately "expansive and flexible approach" to obviousness endorsed in *KSR*, *id*. at 415, Intel has proven that the challenged '675 claims are unpatentable for obviousness over Chen, Wang, and other prior art.

## IV.    QUALCOMM DOES NOT DENY THAT INTEL HAS STANDING TO APPEAL

Intel previously explained why it has suffered an injury in fact and has standing to appeal from the Board's final written decision on remand in the Chen IPRs. IBr. 75-80. Qualcomm's response brief does not even mention the issue, so Intel's standing is undisputed. And this Court has already held multiple times that Intel has standing under these circumstances. *Intel Corp. v. Qualcomm Inc.*, 21

F.4th 784, 790 (Fed. Cir. 2021); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808

(Fed. Cir. 2021); *Intel Corp. v. Qualcomm Inc.*, Nos. 2020-2092, 2020-2093, 2022

WL 880681, at *3 (Fed. Cir. Mar. 24, 2022).

## CONCLUSION

The Court should hold that claims 1-3, 5, 7-15, 17-21, 23-25, and 27-30 of

the '675 patent are unpatentable and accordingly reverse (or at least vacate) the

Board's final written decision on remand in Nos. 2022-1829 and 2022-1830.

Respectfully submitted,

/s/ Louis W. Tompros

DAVID L. CAVANAUGH              LOUIS W. TOMPROS
THOMAS G. SAUNDERS             WILMER CUTLER PICKERING
TODD C. ZUBLER                     HALE AND DORR LLP
GARY M. FOX                           60 State Street
WILMER CUTLER PICKERING     Boston, MA  02109
   HALE AND DORR LLP              (617) 526-6000
2100 Pennsylvania Avenue, NW
Washington, DC  20037             *Attorneys for Cross-Appellant*
(202) 663-6000                        *Intel Corporation*

KATHRYN D. ZALEWSKI
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
(650) 858-6000

June 30, 2023

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1.      The filing has been prepared using a proportionally spaced typeface and includes 6,951 words.

2.      The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Louis W. Tompros
LOUIS W. TOMPROS
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

June 30, 2023